# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/18/2024** at 10:34:27 AM

Clerk of the Superior Court
By Carla Boston,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SUN-MAID GROWERS OF CALIFORNIA; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MARGARET MCGARITY, on behalf of herself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es:)* San Diego County Superior Court
330 W. Broadway
San Diego, CA 92101

CASE NUMBER: *(Número del Caso):*
37-2024-00012618-CU-FR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Aubry Wand, The Wand Law Firm, P.C., 100 Oceangate, Suite 1200, Long Beach, CA 90802, (310) 590-4503

DATE: 03/19/2024
*(Fecha)*

Clerk, by *(Secretario)* C.Boston, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

SUM-100  [Rev. July 1, 2009]

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/18/2024** at 10:34:27 AM
Clerk of the Superior Court
By Carla Boston, Deputy Clerk

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**FARUQI & FARUQI, LLP**
Lisa Omoto (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
Email: lomoto@faruqilaw.com

*Attorneys for Plaintiff and the Putative Classes*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MARGARET MCGARITY, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SUN-MAID GROWERS OF CALIFORNIA; and DOES 1 through 10, inclusive,<br><br>        Defendant. | CASE NO.: 37-2024-00012618-CU-FR-CTL<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of California Consumers Legal Remedies Act<br>2. Violation of California False Advertising Law<br>3. Violation of California Unfair Competition Law<br>4. Breach of Express Warranty (Cal. Com. Code § 2313)<br>5. Breach of Implied Warranty (Cal. Com. Code § 2314)<br>6. Intentional Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Margaret McGarity and ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Sun-Maid Growers of California ("Sun-Maid" or "Defendant"), and Does 1 through 10, based on Sun-Maid's false and deceptive advertising and labeling regarding its yogurt raisin products. Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.      During the statute of limitations period, Sun-Maid has marketed, labeled, advertised, and sold its yogurt raisin products (the "Class Products") to consumers with packaging that has prominently and unequivocally represented that they are yogurt covered raisins.

2.      The Class Products' packaging unequivocally states that the raisins are "Yogurt Covered" (the "*Yogurt Claim*").

3.      Reasonable consumers believe, based on the *Yogurt Claim*, that the Class Products are healthy snacks because they are raisins covered in yogurt, both of which are widely known as healthy foods. However, unbeknownst to consumers, the Class Products are not covered with yogurt, as yogurt is defined under federal regulations, and as consumers commonly understand the term. They are, in fact, raisins coated with a flavored candy shell. Therefore, they are more akin to candies such as Raisinets and Tootsie Rolls than they are to the healthy snack that Sun-Maid markets them as.

4.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period (beginning four years prior to the date that this Complaint was originally submitted to the Court for filing on February 9, 2024), for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express and implied warranty (Cal. Com. Code §§ 2313-2314), and intentional misrepresentation (i.e., common law fraud).

///

1

2                                    **JURISDICTION AND VENUE**

3          5.      This Court has personal jurisdiction over Defendant because Sun-Maid is a

4    California cooperative that is qualified to do business in California and regularly conducts business

5    in California. Defendant has distributed the Class Products throughout California, including in this

6    County.

7          6.      Venue is proper in this County pursuant to California Code of Civil Procedure § 395,

8    *et seq*. and Cal. Civ. Code § 1780(d). Sun-Maid regularly conducts business throughout this County

9    and made the misrepresentations that had a substantial effect in this County. A substantial part of

10   the events or omissions giving rise to Plaintiff's claims occurred in this County. Plaintiff resides in

11   this County, and she purchased Sun-Maid's yogurt covered raisins in this County within the statute

12   of limitations period.

13                                         **PLAINTIFF**

14         7.      Plaintiff is a citizen of the United States and the State of California. She currently

15   resides in Dulzura, California.

16         8.      In or around August 2022, Plaintiff purchased a six-box package of Sun-Maid's

17   Vanilla Yogurt Covered Raisins at a Walmart in La Mesa, California for which she recalls paying

18   between $2 to $4. Plaintiff saw and relied on the *Yogurt Claim* in making this purchase. More

19   specifically, Plaintiff reasonably believed, based on the *Yogurt Claim*, that she was buying raisins

20   that were in fact covered with yogurt. This belief was an important part of her decision to purchase

21   the product. Had Plaintiff known that the product is a candy-coated raisin that is merely vanilla

22   yogurt-flavored, she would not have purchased the product, or she would have paid less for it. Thus,

23   Plaintiff has suffered injury in fact and lost money as a result of Sun-Maid's misleading, false,

24   unfair, and deceptive practices, as alleged herein.

25         9.      Although Plaintiff currently believes that the Class Products are not made with

26   yogurt as represented, she cannot trust any of Sun-Maid's representations, and she lacks personal

27   knowledge as to the specific conditions under which Sun-Maid manufactures the Class Products.

28   Therefore, even though Plaintiff would like to continue purchasing the Class Products if she knew

that they were made with yogurt, Plaintiff will for the time being refrain from doing so. This is a tangible and ongoing harm to Plaintiff that cannot be rectified absent an injunction.

## **DEFENDANT**

10.    Sun-Maid, directly and/or through its agents, marketed, advertised, and sold dried fruit snacks, including the Class Products, across the nation, at all times during the statute of limitations period.

11.    On information and belief, the operations and conduct relevant to the allegations and claims in this Complaint predominately emanate from California.

12.    Sun-Maid has maintained significant contacts in California, having started in the San Joaquin Valley in 1912. Sun-Maid is comprised of 750 grower families with vineyards in California's Central Valley.

13.    Sun-Maid is a California cooperative that maintains its principal place of business and headquarters at 6795 N. Palm Ave., 2nd Floor, Fresno, California, 93704-1088.

14.    Sun-Maid's factory is in Kingsburg, California.

15.    On information and belief, Sun-Maid's executive management team is based in, and works out of, these headquarters. On further information and belief, all relevant operations and business policies and practices were created, designed, contracted, implemented, modified, and/or maintained in California.

16.    For example, Sun-Maid directs all corporate affairs to its Fresno headquarters.[1]

17.    In 2021, Sun-Maid rolled out a marketing campaign called "Imagine That," which was conceived, designed, and implemented by officers working at Sun-Maid's Fresno headquarters.

18.    In addition to producing the Class Products in California, Sun-Maid made the decision to advertise the Class Products as healthy yogurt snacks, and label the Class Products with the *Yogurt Claim*, in California.

19.    Plaintiff and Class members would not have purchased the Class Products, or would have paid less for them, had they known that the *Yogurt Claim* is false and deceptive. Therefore,

---

[1] https://www.sunmaid.com/contact-us/corporate-contact/ (last accessed February 01, 2024).

they have suffered injury in fact and lost money as a result of Sun-Maid's unlawful conduct, as alleged herein, and the economic injury suffered by Plaintiff and Class members was caused by Sun-Maid's policies and practices that originated from its headquarters in Fresno, California.

20.    On further information and belief, Sun-Maid maintains no offices or locations outside of California. Thus, all the unlawful conduct alleged herein emanated from California.

21.    Based on these facts, extraterritorial application of California laws to the Class is appropriate. *See*, *e.g.*, *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145, 159 (2001) (certifying nationwide class based on violation of Cal. Bus. & Prof. Code § 17500 because the defendant was a "California corporation" and the brochures containing the purported misrepresentations "were prepared in and distributed from California."); *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127-CW, 2013 WL 3829653, *7 (N.D. Cal. July 23, 2013) (holding California consumer protection law applied to non-residents where wrongful conduct originated from California); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011) (holding that California law could apply to a nationwide class because "[t]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [the defendant's] headquarters in California.'").

22.    Alternatively, the Court can and should address choice-of-law issues at the class certification stage. *See*, *e.g.*, *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012) (issues regarding the assertion of nationwide class claims "boil down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage.").

23.    The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. On information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff's and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.    The Class Products**

24.    The Class Products consist of Sun-Maid raisins that have been sold with packaging that has borne the *Yogurt Claim*, including but not limited to, Vanilla Yogurt Covered Raisins and Strawberry & Vanilla Yogurt Covered Raisins.

25.    The Class Products are generally sold in packages containing six 1 oz. boxes. They are also sold in 8 oz. bags. The *Yogurt Claim*, however, is prominently displayed in the same manner across all package sizes and types.

26.    Representative images are set forth below:





CLASS ACTION COMPLAINT

**B.      The *Yogurt Claim* is False and Deceptive**

27.      As can be seen from the above images, the *Yogurt Claim* conveys the unequivocal message that the Class Products are covered with yogurt.

28.      However, the Class Products are not covered with yogurt. To the contrary, they are coated with a highly-processed candy coating.

29.      In the ingredients section in fine print for the Vanilla Yogurt Covered Raisins it states:

> INGREDIENTS: VANILLA YOGURT FLAVORED COATING (SUGAR, HYDROGENATED PALM KERNEL OIL, NONFAT MILK POWDER, YOGURT POWDER (CULTURED WHEY AND NONFAT MILK), WHEY POWDER, COLOR ADDED (TITANIUM DIOXIDE), SOY LECITHIN-AN EMULSIFIER, AND VANILLA), CALIFORNIA RAISINS, TAPIOCA DEXTRIN, CONFECTIONER'S GLAZE.

30.      In the ingredients section in fine print for the Strawberry & Vanilla Yogurt Covered Raisins it states:

> INGREDIENTS: FLAVORED COATINGS (SUGAR, HYDROGENATED PALM KERNEL OIL, NONFAT MILK POWDER, YOGURT POWDER (CULTURED WHEY, NONFAT MILK), WHEY POWDER, COLOR ADDED (TITANIUM DIOXIDE, ANNATTO, VEGETABLE JUICE), SOY LECITHIN-AN EMULSIFIER, NATURAL FLAVOR, VANILLA), RAISINS, TAPIOCA DEXTRIN, CITRIC ACID, CONFECTIONER'S GLAZE.

31.      The ingredient list for the Vanilla Yogurt Covered Raisins states that the raisins have a "vanilla yogurt flavored coating" while the ingredient list for the Strawberry & Vanilla Yogurt Covered Raisins states that the raisins have "flavored coatings."[2]

32.      Yogurt powder, an ingredient in the flavored coatings, does not offer any of the expected nutritional benefits of bona fide yogurt. Rather, yogurt powder is a preservative that is

---

[2] This is not a valid disclaimer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 692–93 (Ct. App. 2018) (approving *Williams* and stating that "a back label ingredients list that conflicted with, rather than confirming, a front label claim could not defeat an action"). Moreover, assuming *arguendo* that a reasonable consumer reads the ingredient list in fine print on the back of the product, it would not put a reasonable consumer on notice that the Class Products are not made with yogurt.

used to extend shelf life in foods such as condiments, dips, and spreads. In essence, it is a flavor supplement and emulsifier, not yogurt.

33.    Yogurt powder is also highly processed and heat-treated. The yogurt powder does not contain any viable cultures, as the heat in the drying process kills these helpful bacteria. In fact, the National Yogurt Association ("NYA"), a national non-profit trade association, has stated that "since heat-treated yogurts do not contain [live and active cultures] or provide the functional benefits of [live and active cultures], heat-treated yogurt products are inherently misleading to consumers and should be labeled with some other descriptive or fanciful name."[3]

34.    The NYA also opined that "labeling a product 'heat-treated after culturing' would not cure the potential for consumer deception since the statement fails to sufficiently inform consumers about the deficiencies of a heat-treated product and how it differs functionally from traditional yogurt."[4]

35.    The Federal Food, Drug & Cosmetic Act ("FDCA") regulates the sale of food and beverages to the consuming public. 21 U.S.C.A. § 301. The Act was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling.

36.    The FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling, and they have specified how prominently and conspicuously those words and statements must appear. These provisions, known as "Standards of Identity," ensure that statements are presented on labels in such a way as to likely be read and understood by the ordinary individual under customary conditions of purchase and use. 21 U.S.C. § 343(f).

37.    The FDCA's definition of yogurt is thorough, and it breaks down specifications based on the type of dairy used, the amount of milkfat contained in the finished product, etc. It

---

[3] *National Yogurt Association, Comments to Milk and Cream Products and Yogurt Products; Proposal to Revoke the Standards for Lowfat Yogurt and Nonfat Yogurt and to Amend the Standard for Yogurt* (Docket No. FDA-200-P-0126) (Apr. 29, 2009) at 11.

[4] *See id.* at 5.

provides, in part, "Yogurt is the food produced by culturing one or more of the basic dairy ingredients specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains **the** lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus and Streptococcus thermophilus*. 21 C.F.R. § 131.200(a) (emphasis added).[5]

38.    Yogurt is made by adding the lactic acid producing bacterias (*Lactobacillus delbrueckii subsp. Bulgaricus and Streptococcus thermophilus*) to a source of dairy to ferment it. Thus, one of the primary health benefits associated with yogurt is that it contains active cultures with bacteria—known as probiotics—that is beneficial for gut health.[6]

39.    Plaintiff has independently verified through testing that the yogurt powder contained in the Class Products does not contain *Lactobacillus delbrueckii subsp. bulgaricus and Streptococcus thermophilus* or any live cultures. Thus, it is not yogurt, as defined under 21 C.F.R. § 131.200(a).

40.    The cultures are the source of one of the primary health benefits of yogurt. The health and nutritional benefits from lactic acid bacteria include improved digestion of lactose and control of intestinal infections, some types of cancer, and serum cholesterol levels.[7]

41.    Reasonable consumers believe that the yogurt coating the raisins, like bona fide yogurt, contains probiotic bacteria which can "improve the gut biome and improve digestive health."[8] Indeed, a 2009 Study by Harris Interactive surveyed 2000 individuals and found that 78% of the respondents and 86% of yogurt consumers expected to find live and active cultures in yogurt.[9]

---

[5] Other live cultures can be added. 21 C.F.R. § 131.200(d)(1).

[6] https://www.medicalnewstoday.com/articles/295714 (last accessed February 01, 2024).

[7] "Reconstituted yogurt from yogurt cultured milk powder mix has better overall characteristics than reconstituted yogurt from commercial yogurt powder", Lijie Song, Kayanush J. Argana, https://www.sciencedirect.com/science/article/pii/S0022030214005748 (last accessed February 01, 2024).

[8] "Health Benefits of Yogurt," https://www.webmd.com/diet/health-benefits-yogurt (last accessed February 01, 2024).

[9] Harris Interactive, "Live and Active Culture Survey," https://downloads.regulations.gov/FDA-2000-P-0126-0088/content.pdf (March 25, 2009).

42.     Thus, the Class Products do not provide one of the primary health benefits of yogurt, which reasonable consumers expect, rendering the *Yogurt Claim* false and deceptive.

43.     On March 21, 2014, Philip Spiller, the then Acting Director of the Office of Nutrition, Labeling and Dietary Supplements, Center for Food Safety and Applied Nutrition, sent an informational letter to Sun-Maid, which states in pertinent part that:

> Furthermore, in the ingredient statement of each product, the "yogurt powder" is a sub-ingredient of a "yogurt coating" ingredient. Based on this information, an example of a more appropriate statement of identity for each product appears to be "Vanilla Yogurt-Flavored Covered Raisins" and "Vanilla Yogurt-Flavored Coated Covered Cherries."

*See* **Exhibit A**.

44.     In other words, Sun-Maid should include the text "Vanilla Yogurt-Flavored Covered Raisins" on the consumer facing front label of its product package. The Class Products do not contain that text as shown *supra* ¶ 26.

45.     In short, the yogurt powder is just a secondary ingredient in the yogurt flavored coating. Given that it is comprised of cultured whey and non-fat milk, it does not have (and never had) the characteristic lactic acid producing bacteria (*Lactobacillus delbrueckii subsp. Bulgaricus and Streptococcus thermophilus*) required to classify it as yogurt, as this term is commonly understood by consumers or as defined under federal regulations.

46.     Moreover, most of the ingredients in the Class Products are unhealthy and unnatural, as explained below:

- There is added sugar, which speaks for itself.
- There is confectioner's glaze made from shellac, which is derived from resin scraped from the branches of trees left from when an insect creates a hard, waterproof cocoon. It is commonly used as a glaze in several candy products, including candy corn, Whoppers, Raisinets, Milk Duds, Tootsie Rolls, Sugar Babies, and Junior Mints.

-9-
CLASS ACTION COMPLAINT

- Hydrogenated palm kernel oil, as the name suggests, is oil derived from palm fruit that is then combined with hydrogen. It is not a natural oil. It is often added to food to preserve consistency. It is considered dangerous because it is in high in saturated fats.[10]

- Titanium dioxide is a manufactured chemical that is often used as a pigment in paint, sunscreen, and food coloring. In this case, it is added to make the yogurt flavored coating white. Titanium dioxide is a known carcinogen. It is on the list banned of banned substances under California's Proposition 65.

- Soy lecithin is a food additive derived from soy and is often used as an emulsifier (i.e., to prevent fats and oils and from mixing with other substances) in foods, as is the case here. Soy lecithin may be considered harmful, but at a minimum it is an unnatural ingredient that does not provide any health benefits.

- Tapioca dextrin is a starch that acts as an adhesive coating for candy, snack and vegetable, and meat substrates. It is also it is an unnatural ingredient that does not provide any health benefits.

47.    In combination, the ingredients that make up the flavored coating do not constitute real yogurt. Several of them are unnatural and at least one of them is a potential carcinogen. Holistically, the flavored coating is an unhealthy candy coating, not an actual yogurt coating. The ingredients are similar to those found in Candy Coated Tootsie Roll Snowballs.[11]

48.    Thus, the *Yogurt Claim* is false under federal regulations and it is deceptive because it misleads reasonable consumers into believing the Class Products are healthy yogurt snacks. Conversely, reasonable consumers do not expect, based on *Yogurt Claim*, that the Class Products are coated with a highly-processed candy coating that contains no yogurt and never contained any yogurt.

///

---

[10] Almost all the fat in the product is from saturated fat found in processed ingredients such as the hydrogenated palm kernel oil.

[11] Both the Tootsie Roll product and the Class Products contain added sugar, palm oil, whey, titanium dioxide, soy lecithin, and tapioca dextrin.

## C.    The *Yogurt Claim* is Material

49.    Consumers prefer to purchase and eat healthy foods and are willing to pay a premium on foods marketed and labeled as being healthy.[12]

50.    Because of its reputation as a health food, there is a "health halo" surrounding the presence of yogurt in a product. The health halo effect is the act of "overestimating the healthfulness of an item based on a single claim, such as being low in calories or low in fat."[13] Over the past two decades, the yogurt industry has boomed into prominence, estimated to be worth over 14 billion dollars by 2024.[14]

51.    In recent years, Sun-Maid has incorporated a line of "yogurt-covered products" to exploit the "health halo" effect of yogurt, in effect combining yogurt with raisins to convey the notion that the Class Products are an extremely healthy fruit-covered yogurt snack that also tastes great.[15]

52.    Indeed, Sun-Maid is also well-aware that consumers prefer healthy snack products— i.e., that the *Yogurt Claim* is material. This message is evident from Sun-Maid's off-label marketing. For example, Sun-Maid provides information regarding the health benefits of the Class Products on its website. It has touted raisins as "antioxidant powerhouses" and a "healthy snack" and described its Vanilla Yogurt Covered Raisins as "raisins wrapped in a creamy blanket of vanilla yogurt—

---

[12] *See*, *e.g.*, Nancy Gagliardi, "Consumers Want Healthy Foods—And Will Pay More For Them," Forbes (Feb. 18, 2015) ("88% of those polled are willing to pay more for healthier foods") https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/?sh=67a817b9975c5 (last accessed February 01, 2024).

[13] *See* "The health halo: how good PR is misleading shoppers," John Peloza and William Montford, https://www.theguardian.com/sustainable-business/2015/mar/11/know-what-you-eat-health-halo#:~:text=The%20health%20halo%20effect%20refers,the%20overconsumption%20of%20certain%20foods. (last accessed February 01, 2024).

[14] *See* https://thecounter.org/the-yogurt-industry-is-expected-to-reach-14-5-billion-by-2024/ (last accessed February 01, 2024)

[15] Related claims, including "Non GMO," which bolster the reasonable belief that the Products are healthy yogurt snacks, are also prominently printed on the front packaging.

perfect for a health, on-the-go snack that's got your cravings covered" on its website during the statute of limitations period:[16]



---

[16] Although Plaintiff is not alleging that consumers rely on Sun-Maid's website representations, they nonetheless reveal Sun-Maid's belief that the *Yogurt Claim* is material, and the intent to exploit the health halo of yogurt.

53.    Further propagating the misconception that the Class Products are healthy yogurt snacks is the fact that they are generally placed in the healthy snack aisle of the grocery store—i.e., where nuts and dried fruits are sold—not the candy aisle where Raisinets are sold.

54.    Similarly, while shopping online, the Class Products are sold under the "Direct Fruits" section at Vons and Pavilions,[17] the "Health Kids Snacks" section at Walmart,[18] and the "Dried Fruit & Raisins" section at Target.[19]

55.    In 2019, Sun-Maid launched a marketing campaign "to drive consumer awareness of the new reformulation. The overarching message is that Yogurt Covered Raisins are a whole fruit snack and permissible indulgence that kids will crave and moms will approve."[20]

56.    A corollary product is chocolate covered raisins. For example, Raisinets, and other candy covered raisin brands have additives similar to the Class Products, such as soy lecithin and tapioca dextrin. Raisinets are known as candy and are not advertised or labeled otherwise. For example, they are sold in the candy aisle of the grocery store with other equally unhealthy products such as Candy Coated Tootsie Roll Snowballs. However, when you compare Raisinets, Candy Coated Tootsie Roll Snowballs, and the Class Products, their nutritional value is materially the same—i.e., they are all equally bad for your health.

57.    As set forth in the following chart, Raisinets, Candy Coated Tootsie Roll Snowballs, and the Vanilla Yogurt Covered Raisins contain similar nutritional content: [21]

---

[17] https://www.vons.com/shop/product-details.184740172.html (last accessed February 01, 2024).

[18] https://www.walmart.com/ip/Sun-Maid-Yogurt-Raisins-Strawberry-Vanilla-Dried-Fruit-Healthy-Snack-1-oz-6-Ct/315136034?wl13=2226&selectedSellerId=0 (last accessed February 01, 2024)

[19] https://www.target.com/p/sun-maid-strawberry-vanilla-yogurt-raisins-6ct/-/A-82237797#lnk=sametab (last accessed February 01, 2024).

[20] Sun-Maid, Cision PR Newswire, "Sun-Maid Revamps its Yogurt Covered Raisins to Better Appeal to Millennials." https://www.prnewswire.com/news-releases/sun-maid-revamps-its-yogurt-covered-raisins-to-better-appeal-to-millennials-300913394.html (last accessed February 01, 2024).

[21] These nutritional values are based on 24g for Raisinets, 31g for Tootie Rolls, and 28g for the Vanilla Yogurt Covered Raisins. Accordingly, the values have also been adjusted so that they are

| Serving | Raisinets Dark Chocolate | Candy Coated Tootsie Roll Snowballs | Sun-Maid Vanilla Yogurt Covered Raisins |
|---|---|---|---|
| Calories | 110 | 110; 85.14 | 120; 102.84 |
| Fat | 4.5g | 2g; 1.55g | 5g; 4.29 |
| Sodium | 0 | 5mg; 3.87mg | 15mg; 12.86mg |
| Fiber | 1g | N/A | <1g; < 0.86g |
| Total Sugars | 14g | 17g; 13.16g | 17g; 14.57g |
| Added Sugars | 13g | 17g; 13.16g | 9g; 7.71g |
| Protein | 1g | 0g; 0g | <1g; < 0.86g |

58.    Consumers purchased, and continue to purchase, the Class Products in part because the *Yogurt Claim* conveys the unequivocal message that they are natural and healthy yogurt covered raisins. Plaintiff and Class members would have paid less for the Class Products, or they would not have purchased them at all, but for the *Yogurt Claim*. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Class Products command in the market as a result of Sun-Maid's representations that they are covered with yogurt.

**CLASS ACTION ALLEGATIONS**

59.    Plaintiff brings this class action pursuant to Cal. Code of Civ. P. § 382, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All natural persons who purchased at least one of the Class Products in the United States within the applicable statute of limitations period.

**California Class**

All natural persons who purchased at least one of the Class Products in the state of California within the applicable statute of limitations period.

---

all based on a 24g serving size – i.e. the Vanilla Yogurt Covered Raisins are multiplied by 85.7% and the Tootsie Roll products are multiplied by 77.4%.

**California Consumer Subclass**

All natural persons who purchased at least one of the Class Products in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period.

60.     Excluded from the Classes are the following individuals and/or entities: Sun-Maid and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Sun-Maid has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

61.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

62.     Plaintiff is a member of the Nationwide Class and the California Subclasses.

63.     <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. Class Products is sold throughout the United States and the State of California. The number of individuals who purchased Class Products during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

64.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

       a.  Whether Sun-Maid misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

       b.  Whether Sun-Maid's use of challenged packaging constituted false or deceptive advertising;

    c.   Whether Sun-Maid engaged in unfair, unlawful and/or fraudulent business practices;

    d.   Whether Sun-Maid's unlawful conduct, as alleged herein, was intentional and knowing;

    e.   Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

    f.   Whether Sun-Maid is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

    g.   Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

65.    Sun-Maid has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Sun-Maid's deceptive packaging and advertising of Class Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as (a) the packaging of Class Products bears the same material *Yogurt Claim*, and (b) the Class Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

66.    <u>Superiority</u>: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

///

///

67.     Typicality: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Sun-Maid's uniform unlawful conduct as alleged herein.

68.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

69.     Sun-Maid has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## FIRST CLAIM FOR RELIEF
### Violation of California's Consumers Legal Remedies Act
### California Civil Code § 1750, *et seq.*
### (*For the Nationwide Class and California Consumer Subclass*)

70.     Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Sun-Maid pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

72.     The Class Products are a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Class Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

73.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Class Products with their current packaging, Sun-Maid has represented and continues to represent that the Class Products have characteristics (i.e., covered with yogurt) that they do not have. Therefore, Sun-Maid has violated section 1770(a)(5) of the CLRA.

///

74.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Class Products with their current packaging, Sun-Maid has represented and continues to represent that the Class Products are of a particular standard (i.e., covered with yogurt) which they do not possess. Therefore, Sun-Maid has violated section 1770(a)(7) of the CLRA.

75.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products as raisins covered with yogurt, but not intending to sell Class Products as such (i.e., selling them with the knowledge that they are covered with highly-processed yogurt-flavored candy coating), Sun-Maid has violated section 1770(a)(9) of the CLRA.

76.     At all relevant times, Sun-Maid has known or reasonably should have known that its *Yogurt Claim* on the Class Products' packaging is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on it when purchasing the Class Products. Nonetheless, Sun-Maid persisted in making the *Yogurt Claim* on the Class Products' labels in order to deceive consumers into believing they are buying a healthy snack with real yogurt, as opposed to a candy-coated raisin.

77.     Plaintiff and members of the California Consumer Subclass have justifiably relied on Sun-Maid's misleading *Yogurt Claim* when purchasing the Class Products. Moreover, based on the materiality of Sun-Maid's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

78.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Sun-Maid because they would have paid less for the Class Products, or would not have purchased them at all, had they known that the *Yogurt Claim* was untrue.

79.     On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Sun-Maid received this notice and demand letter on February 14, 2024.

80.     Because Sun-Maid has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after Sun-Maid received the foregoing notice and demand letter, Plaintiff is timely filing this Complaint for damages, as permitted under Cal. Civ. Code § 1782(d). Plaintiff also requests that this Court enjoin Sun-Maid from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future. Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

81.     Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500**, *et seq*
(***For the Classes***)

82.     Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

84.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.     Sun-Maid has represented and continues to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive packaging, that the Class Products are covered with yogurt. Because Sun-Maid has disseminated misleading information regarding Class Products, and Sun-Maid knows, knew, or should have known, through the exercise of reasonable care, that the *Yogurt Claim* is misleading, Sun-Maid has violated the FAL.

86.     As a result of Sun-Maid's false advertising, Sun-Maid has and continues to unlawfully obtain money from Plaintiff and members of both Classes. Plaintiff therefore requests that the Court cause Sun-Maid to restore this fraudulently obtained money to them and members of the proposed Classes, to disgorge the profits Sun-Maid made on these transactions, and to enjoin Sun-Maid from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Classes*)**

87.     Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

88.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

89.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

90.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Sun-Maid's false and misleading advertising of Class Products was and continues to be "unlawful" because it violates the CLRA, the FAL, federal regulations (including 21 C.F.R. § 131.200), and other applicable laws as alleged herein. As a result of Sun-Maid's unlawful business acts and practices, Sun-Maid has unlawfully obtained money from Plaintiff, and members of the proposed Classes.

91.     Under the UCL, a business act or practice is "unfair" if the Sun-Maid's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Sun-Maid's conduct was and continues to be of no benefit to purchasers of the Class Products, as it is misleading, unfair, unlawful, and is injurious to consumers

who rely on the packaging. Deceiving consumers into believing the Class Products are raisins covered with yogurt, when they are candy-coated raisins with yogurt flavor, is of no benefit to consumers. Therefore, Sun-Maid's conduct was and continues to be "unfair." As a result of Sun-Maid's unfair business acts and practices, Sun-Maid has and continues to unfairly obtain money from Plaintiff, and members of the proposed Classes.

92.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Sun-Maid's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Class Products are raisins covered with yogurt, when they are candy-coated raisins with yogurt flavor. Because Sun-Maid misled Plaintiff and members of both Classes, Sun-Maid's conduct was "fraudulent." As a result of Sun-Maid's fraudulent business acts and practices, Sun-Maid has and continues to fraudulently obtain money from Plaintiff and members of the proposed Classes.

93.     Plaintiff requests that the Court cause Sun-Maid to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed Classes, to disgorge the profits Sun-Maid made on these transactions, and to enjoin Sun-Maid from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

### FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty**
**California Commercial Code § 2313**
(***For the Classes***)

94.     Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

96.     California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an

express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

97. Sun-Maid has expressly warranted on the Class Products' packaging that they are yogurt covered raisins through the *Yogurt Claim*.

98. This representation about the Class Products is: (a) an affirmation of fact or promise made by Sun-Maid to consumers that Class Products are yogurt covered raisins; (b) became part of the basis of the bargain to purchase the Class Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Products is a description of goods which were made as part of the basis of the bargain to purchase the Class Products, and which created an express warranty that the Class Products would conform to the product description.

99. Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Class Products did in fact conform to those warranties.

100. Sun-Maid has breached the express warranties made to Plaintiff and members of the proposed Classes by failing to the produce the Class Products in accordance with the *Yogurt Claim*, as expressly warranted on the packaging.

101. Plaintiff and members of the proposed Classes paid a premium price for the Class Products but did not obtain the full value of the Class Products as represented. If Plaintiff and members of the proposed Classes had known of the true nature of the Class Products, they would not have been willing to pay the premium price charged in the market. As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

102. On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims for breach of express and implied warranty and the factual basis for those claims. This letter was sent within one month of when Plaintiff first discovered the facts giving rise to her claims.

### FIFTH CLAIM FOR RELIEF
### Breach of Implied Warranty

**California Commercial Code § 2314(2)(f)**
(*For the Classes*)

103.    Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

105.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

106.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

107.    Sun-Maid is a merchant with respect to the sale of the Class Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Class Products to California consumers.

108.    By advertising the Class Products with their current packaging, Sun-Maid made an implied promise that the Class Products are made with yogurt, such that they would provide actual health benefits. The Class Products do not, however, "conform to the promises…made on the container or label" because they do not possess any actual yogurt, and they never did. Further, the yogurt-flavored coating contains no live cultures and is chock full of sugar and saturated fat. Plaintiff, as well as consumers, did not receive the goods as impliedly warranted by Sun-Maid to be merchantable.

109.    Therefore, the Products are not merchantable under California law and Sun-Maid has breached its implied warranty of merchantability with respect to the Class Products.

110.    If Plaintiff and members of the Nationwide Class and California Subclass had known that the Products were not made with real yogurt, they would not have been willing to pay the premium price associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Sun-Maid's breach, Plaintiff and members of the Nationwide Class

and California Subclass have suffered injury and deserve to recover all damages afforded under the law.

111.     On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims for breach of express and implied warranty and the factual basis for those claims. This letter was sent within one month of when Plaintiff first discovered the facts giving rise to her claims.

**SIXTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
***(for the Classes)***

112.     Plaintiff repeats the allegations contained in paragraphs 1-69 above as if fully set forth herein.

113.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

114.     Sun-Maid marketed the Class Products in a manner indicating that they are yogurt covered raisins. Therefore, Sun-Maid has made misrepresentations about the Class Products.

115.     The *Yogurt Claim* is material to a reasonable consumer because it relates to the quality and healthfulness of the Class Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to fruit and yogurt covered snacks.

116.     At all relevant times, Sun-Maid knew that the *Yogurt Claim* was misleading. Sun-Maid intends for Plaintiff and other consumers rely on the *Yogurt Claim*, as evidenced by Sun-Maid intentionally and conspicuously placing it on the packaging of the Class Products. This can also be seen in Sun-Maid's marketing campaign. In the alternative, Sun-Maid acted recklessly in making the *Yogurt Claim* without regard to the truth.

117.     Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Sun-Maid's intentional misrepresentations (i.e., the *Yogurt Claim*) when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market.

118.     Therefore, as a direct and proximate result of Sun-Maid's intentional

CLASS ACTION COMPLAINT

misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.     Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.     A declaration that Sun-Maid's actions, as described herein, violate the claims described herein;

C.     An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Sun-Maid obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, *inter alia*, an order prohibiting Sun-Maid from engaging in the unlawful act described above;

E.     An award of all economic, monetary, actual, consequential, and compensatory damages caused by Sun-Maid's conduct;

F.     An award of punitive damages;

G.     An award of nominal damages;

H.     An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

I.     An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J.     For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

1

2    DATED: March 18, 2024           **THE WAND LAW FIRM, P.C.**

3

4                                    By: _____
                                          Aubry Wand
5

6                                    **FARUQI & FARUQI, LLP**
                                     Lisa T. Omoto
7
                                     *Attorneys for Plaintiff and the Putative*
8                                    *Classes*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT A

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Public Health Service

_____

Food and Drug Administration
College Park, MD 20740-38

MAR 2 1 2014

Barry Kriebel
President
Sun-Maid Growers of California
13525 S. Bethel Avenue
Kingsburg, California 93631-9212

REC'D MAR 2 8 2014

Dear Mr. Kriebel:

This letter is in reference to your Sun-Maid® "Vanilla Yogurt Raisins Mini-Snacks" and your Sun-Maid "Vanilla Yogurt Cherries" products, which were recently brought to our attention. We offer the following information concerning the product labels, particularly with regard to the ingredient statement and the statement of identity.

As you may know, the Food and Drug Administration's (FDA's) ingredient labeling regulations are found in Title 21 of the Code of Federal Regulations, section 101.4 (21 CFR 101.4). We note that one of the ingredients in the Sun-Maid "Vanilla Yogurt Raisins Mini-Snacks" product is "nonfat yogurt powder;" however, the sub-components of the "nonfat yogurt powder" are not listed. We note that all ingredients, including the ingredients of multi-component foods must be listed on the product label in accordance with 21 CFR 101.4(b)(2), unless exempt under 21 CFR 101.100. In addition, the word "natural" before the words "California raisins" is not provided for in 21 CFR 101.4.

We also offer comments on the statement of identity of your Sun-Maid "Vanilla Yogurt Raisins Mini-Snacks" and your Sun-Maid "Vanilla Yogurt Cherries" products. The name of each product must accurately describe the basic nature of the food (21 CFR 101.3 and 102.5). As you may know, yogurt and nonfat yogurt are standardized foods in accordance with 21 CFR 131.200 and 21 CFR 131.206, respectively. Therefore, your products must contain the standardized food, yogurt, in order to bear the name "yogurt" in the statement of identity. If the ingredient that you have identified as "yogurt powder" for your Sun-Maid "Vanilla Yogurt Raisins Mini-Snacks" and your Sun-Maid "Vanilla Yogurt Cherries" products is yogurt that has been dried, then we do not object to the inclusion of the term "yogurt" in the statement of identity for each product. However, if there is no ingredient in either product that meets the yogurt or nonfat yogurt standards, then the statement of identity of each product must not contain the term "yogurt" unqualified as a part of the name. Furthermore, in the ingredient statement of each product, the "yogurt powder" is a sub-ingredient of a "yogurt coating" ingredient. Based on this information, an example of a more appropriate statement of identity for each product appears to be "Vanilla Yogurt-Flavored Covered Raisins" and "Vanilla Yogurt-Flavored Coated Covered Cherries."

Page-2- Mr. Barry Kreibel

We hope that you find the information in this letter helpful in ensuring that your Sun-Maid "Vanilla Yogurt Raisins Mini-Snacks" and Sun-Maid "Vanilla Yogurt Cherries" products are accurately labeled.  You may wish to visit our website at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm2006828.htm
for additional information on our food labeling regulations.

If you have any questions or if you wish to respond to this letter, please address your response to Ms. Felicia B. Billingslea, Director, Food Labeling and Standards Staff, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, College Park, MD 20740.

We wish to thank you in advance for your attention to these matters.

Sincerely yours,

Philip Spiller
(Acting) Director
Office of Nutrition, Labeling,
    and Dietary Supplements
Center for Food Safety
    and Applied Nutrition
Food and Drug Administration

# EXHIBIT B

DocuSign Envelope ID: 4F953B27-1218-4503-A156-7A56B4264841

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Margaret McGarity, declare as follows:

1.      I am a Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because the transaction giving rise to my claims, i.e., my purchase of the products at issue, occurred in this county.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on _2/1/2024 | 9:56 PM EST_ at La Mesa, California.



Margaret McGarity

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7072 |

| PLAINTIFF(S) / PETITIONER(S): | MARGARET MCGARITY |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | SUN-MAID GROWERS OF CALIFORNIA |
|---|---|

MCGARITY VS SUN-MAID GROWERS OF CALIFORNIA [E-FILE]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2024-00012618-CU-FR-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge: Marcella O McLaughlin                    Department: C-72

## COMPLAINT/PETITION FILED: 03/18/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/30/2024 | 01:30 pm | C-72 | Marcella O McLaughlin |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>TIME FOR SERVICE AND RESPONSE:</u> The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):

- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>JURY FEES:</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>COURT REPORTERS:</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

<u>ALTERNATIVE DISPUTE RESOLUTION (ADR):</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

CM

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Aubry Wand (SBN 281207)<br>The Wand Law Firm, P.C., 100 Oceangate, Suite 1200, Long Beach, CA 90802<br><br>TELEPHONE NO.: (310) 590-4503    FAX NO. :<br>EMAIL ADDRESS: awand@wandlawfirm.com<br>ATTORNEY FOR (Name): Plaintiff Margaret McGarity | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/18/2024** at 10:34:27 AM<br>Clerk of the Superior Court<br>By Carla Boston, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA  COUNTY OF  SAN DIE  O
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Hall of Justice

CASE NAME:
McGarity v. Sun-Maid Growers of California

| *CIVIL CASE COVER S  EET* | | CASE NUMBER: |
|---|---|---|
| [x] U      d   [ ] L      d<br>(Amount<br>demanded<br>exceeds $35,000)  (Amount<br>demanded is<br>$35,000 or less) | C      C    D<br>[ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2024-00012618-CU-FR-CTL<br><br>Judge Marcella O McLaughlin |

Items 1  6 below must be completed (see instructions on page 2).

1.  Check     box below for the case type that best describes this case:

*A   T r*
[ ] Auto (22)
[ ] Uninsured motorist (46)

*O   r PI PD   D (P r    l  r Pr   r
D        r     D    ) T r*
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

*N   PI PD   D (O   r) T r*
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

*E*
[ ] Wrongful termination (36)
[ ] Other employment (15)

*C   r*
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

*R   P r*
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

*U       D   r*
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

*J  d    R*
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

*Pr        C       C    L
(C  R       C     r  r                )*
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

*E   r       J  d*
[ ] Enforcement of judgment (20)

*M         C    C*
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

*M         C  P*
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2.  This case [x] is  [ ] is not     complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties
 b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
 c. [x] Substantial amount of documentary evidence
 d. [ ] Large number of witnesses
 e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
 f. [x] Substantial postjudgment judicial supervision

3.  Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4.  Number of causes of action (specify): Six
5.  This case [x] is  [ ] is not    a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: March 18, 2024
Aubry Wand
_____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

P

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                           CM

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (not asbestos or toxic environmental) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (not civil harassment) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (not medical or legal)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)
  Contract/Warranty Breach–Seller Plaintiff (not fraud or negligence)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (not provisionally complex) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (not eminent domain, landlord tenant, or foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (arising from provisionally complex case type listed above) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (non-domestic relations)
  Sister State Judgment
  Administrative Agency Award (not unpaid taxes)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified above) (42)
  Declaratory Relief Only
  Injunctive Relief Only (non-harassment)
  Mechanics Lien
  Other Commercial Complaint Case (non-tort non-complex)
  Other Civil Complaint (non-tort non-complex)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (not specified above) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego CA 92101-3827 |
| BRANCH NAME: | Central |

FOR COURT USE ONLY

Short Title: McGarity vs Sun-Maid Growers of California [E-FILE]

| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | CASE NUMBER:<br>37-2024-00012618-CU-FR-CTL |
|---|---|

San Diego Superior Court has reviewed the electronic filing described below. The fee assessed for processing and the filing status of each submitted document are also shown below.

**Electronic Filing Summary Data**

| | |
|---|---|
| Electronically Submitted By: | Aubry Wand |
| On Behalf of: | MARGARET MCGARITY |
| Transaction Number: | 21999504 |
| Court Received Date: | 03/18/2024 |
| Filed Date: | 03/18/2024 |
| Filed Time: | 10:34 AM |
| Fee Amount Assessed: | $1,435.00 |
| Case Number: | 37-2024-00012618-CU-FR-CTL |
| Case Title: | McGarity vs Sun-Maid Growers of California [E-FILE] |
| Location: | Central |
| Case Type: | Fraud |
| Case Category: | Civil - Unlimited |
| Jurisdictional Amount: | > 35000 |

| **Status** | **Documents Electronically Filed/Received** |
|---|---|
| Accepted | Complaint |
| Accepted | Civil Case Cover Sheet |
| Accepted | Original Summons |

**Comments**

**Clerk's Comments:**
**Events Scheduled**

| **Hearing(s)** | **Date** | **Time** | **Location** | **Department** |
|---|---|---|---|---|
| Civil Case Management Conference | 08/30/2024 | 01:30 PM | Central | C-72 |

**Electronic Filing Service Provider Information**

| | |
|---|---|
| Service Provider: | LegalConnect |
| Email: | support@legalconnect.com |

Contact Person:        LEGALCONNECT Support
Phone:                 (800) 909-6859

**NOTICE OF CONFIRMATION OF FILING**