1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

MARGARET MCGARITY, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SUN-MAID GROWERS OF CALIFORNIA and DOES 1 through 10, inclusive,

Defendants.

Case No. 24-cv-0714-BAS-DEB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 12)**

This case concerns whether Defendant Sun-Maid Growers of California ("Sun-Maid" or "Defendant") violates California consumer protection laws by using the term "yogurt-covered" on the packages of its "Vanilla Yogurt Covered Raisins" and "Strawberry & Vanilla Yogurt Covered Raisins" (collectively, "the Products"). Defendant moves to dismiss Plaintiff Margaret McGarity's ("Plaintiff" or "McGarity") Complaint, primarily on the grounds that federal law preempts Plaintiff's state-law claims. (ECF No. 12 or "Mot.") Plaintiff opposes. (ECF No. 13 or "Opp'n.") Defendant replies. (ECF No. 14.)

The Court finds the motions suitable for determination on the papers submitted and without oral argument. Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss. (ECF No. 12.)

24cv0714

## I.     BACKGROUND

Plaintiff brings this putative class action alleging that Sun-Maid's "yogurt-covered raisins" violate California false advertising and consumer protection law because the Products are, in fact, not coated in yogurt as defined by federal regulations and as understood by a reasonable consumer.

Specifically, Plaintiff challenges Sun-Maid's labeling of the Products called "Vanilla Yogurt Covered Raisins" and "Strawberry and Vanilla Yogurt Covered Raisins." Plaintiff alleges the Products are not coated with yogurt, but with a "highly-processed candy coating." (Compl. ¶ 28.)  Plaintiff derives this allegation from the lists of ingredients for the Products, which include "yogurt powder."  (*Id.* ¶¶ 29–30.)

The Food and Drug Administration ("FDA"), acting under the federal Food, Drug & Cosmetic Act ("FDCA"), promulgated regulations defining yogurt as "the food produced by culturing one or more of the basic dairy ingredients . . . with a characterizing bacterial culture that contains the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*."  21 C.F.R. § 131.200(a).

Plaintiff tested the yogurt powder contained in the Products and found it does not contain the requisite bacteria or any live cultures as specified by the FDA's regulations. (Compl. ¶ 39.)  Plaintiff asserts that the yogurt powder "does not offer any of the expected nutritional benefits of bona fide yogurt" and "does not contain any viable [yogurt] cultures," and therefore Sun-Maid's labeling misrepresents the Products.  (*Id.* ¶¶ 32–33.) Over ten years ago, Sun-Maid received an informational letter from the FDA advising Sun-Maid to more appropriately identify one of the Products as "Vanilla Yogurt-<u>Flavored</u> Covered Raisins" rather than "Vanilla Yogurt Covered Raisins."  (*Id.* ¶ 43.)  Sun-Maid received this letter in 2014 but did not revise its label.  (*Id.*; *see also* Compl., Ex. A.)

In 2021, the FDA issued a Yogurt Final Rule where it clarified that "yogurt-covered" products, such as cereal or pretzels, need not be covered in "yogurt," as defined by the standard of identity above.  Rather, such nonstandardized products with "yogurt" in the

24cv0714

product name must contain yogurt powder that <u>derives</u> from yogurt.  *See* Yogurt Final Rule, 86 Fed. Reg. 31117-01, 31124 (June 11, 2021) (to be codified at 21 C.F.R. pts. 130–131).

Plaintiff brings seven claims under (1) California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; (2) California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; (3) California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; (4)  breach of express warranty, California Commercial Code § 2313; (5) breach of the implied warranty of merchantability, California Commercial Code § 2314(2)(f); and (6) intentional misrepresentation under California common law.  Plaintiff seeks various forms of declaratory, injunctive, and monetary relief, as well as attorney's fees and costs

Defendant moves to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 9(b), 12(b)(1), and 12(b)(6).  Defendant argues Plaintiff's claims are preempted and that Plaintiff fails to state a claim for breach of express or implied warranty, or of intentional misrepresentation.  Defendant also argues the economic loss rule bars Plaintiff's claim for intentional misrepresentation.  Further, Defendant claims a reasonable consumer could not believe the raisins would be covered with yogurt.  Finally, Defendant argues that Plaintiff has no standing to pursue the injunctive relief she seeks.

## II.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to make sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citations omitted).  In evaluating the sufficiency of these factual allegations, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation

24cv0714

omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  A district court may also dismiss a complaint when its allegations "give rise to an affirmative defense that clearly appears on the face of the pleading." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022).  "Preemption, on which the defendant bears the burden, . . . can be such a defense."  *Pardini v. Unilever U.S., Inc.*, 65 F.4th 1081, 1084 (9th Cir. 2023) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

## III.   ANALYSIS

The concept of federal preemption of state laws is grounded in the Supremacy Clause of the Constitution.  Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, since *M'Culloch v. Maryland*, 17 U.S. 316 (1819), the federal judicial system has held "that state law that conflicts with federal law is 'without effect,'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

"The party contending that a claim is preempted bears the burden of establishing preemption." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) (citation omitted).  "Express preemption exists when a statute explicitly addresses preemption." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020).  Courts apply a presumption against preemption because the "historic police powers of the States

were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000) (citation omitted).  In the area of proper marketing and labeling of food products, the presumption against preemption is "strong." *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (citing *Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." (citation omitted))).

To escape FDCA preemption, private plaintiff claims must fit through a narrow window.  The claims may neither be brought *because* they violate the FDCA, nor may they be brought for acts that the FDCA *permits*.  In other words, "[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).  Private plaintiffs may only bring a state-law claim where that state requirement "effectively parallels or mirrors the relevant sections of the [Nutrition Labeling and Education Act]." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).  Here, Plaintiff's claims fail to squeak through this window because Plaintiff brings claims for something that does not violate the FDCA.

The Secretary of Health and Human Services has authority to promulgate regulations to enforce the FDCA, 21 U.S.C. § 371(a), and has delegated this authority to the FDA, *see FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 126 (2000).  With this authority, the FDA has created a standard of identity for yogurt. *See* 21 C.F.R. § 131.200. When it published this standard of identity, the FDA clarified that the standard does not apply to products identified as "yogurt-covered." *See* Yogurt Final Rule, 86 Fed. Reg. at

24cv0714

31124 (listing "frozen yogurt, yogurt-coated cereal, and dried yogurt powder" as "nonstandardized products").[1]

As held in *Kisor v. Wilkie*, courts defer to an agency's reasonable interpretation of its own regulation, such as this, only when the regulation is "genuinely ambiguous" or "susceptible to more than one reasonable reading."   588 U.S. 558, 566 (2019).   Here, whether products claiming to be "yogurt-covered" must conform that yogurt coating with the standard of identity for yogurt is ambiguous.   On the one hand, something that is "yogurt-covered" may be required to be covered with standardized yogurt.   On the other, there is a long history of "yogurt-covered" products being covered not with fresh yogurt, but with a hardened shell coating.[2]   That such products need not be covered with "yogurt," comporting with the standard of identity laid out by the FDA, is a reasonable interpretation of the FDA's regulations.   Applying this deference, the Court defers to the FDA's reasonable interpretation of its own genuinely ambiguous regulation regarding what must comply with the "yogurt" standard of identity.   Yogurt-covered raisins need not comply.

Each claim in Plaintiff's Complaint rests on Defendant's raisins being coated by a product that does not conform with the standard of identity for yogurt.   However, as described above, the FDA, in interpreting its own regulations under the FDCA, does not require "yogurt-coated" products to conform with that standard of identity.   Yogurt Final Rule, 86 Fed. Reg. at 31124.   Therefore, requiring Defendant's Products to conform with

---

[1] The Court **GRANTS** Defendant's request for judicial notice of this guidance.  (Mot. at 3 n.3)  As a matter of public record, it is judicially noticeable because the underlying facts are not subject to reasonable dispute and are not disputed here.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[2] Indeed, the guidance accompanying the Yogurt Final Rule is not the only time the FDA has noted this. In the FDA's 2014 letter to Defendant attached to Plaintiff's Complaint, the FDA specifically notes that "If the ingredient that you have identified as 'yogurt powder' . . . . is yogurt that has been dried, then we do not object to the inclusion of the term 'yogurt' in the statement of identity for each product.'"  (Compl., Ex. A at 1.)  While the letter goes on to state that a "more appropriate statement of identity for each product appears to be 'Vanilla Yogurt-Flavored Covered Raisins,'" it does not state than any particular provision of the FDCA requires the change and there is no indication the FDA later sought to enforce that recommended change.  (*Id.*)

that standard of identity in California, but not anywhere else, would impose the exact kind of regulatory asymmetry preempted by the FDCA.  21 U.S.C. § 343-1.

The Court notes that the FDA also requires that yogurt-covered products be coated with a product containing yogurt powder derived from dried yogurt that conforms with the standard of identity for yogurt.  Yogurt Final Rule, 86 Fed. Reg. at 31124.  Plaintiff states that the dried yogurt powder used in the Products' coating does not contain the live cultures or bacteria required by the standard of identity.[3]  (Compl. ¶ 39.)  However, the Complaint is vague as to whether that means the yogurt the powder derived from did not contain those cultures or bacteria, or if the processing of yogurt into yogurt powder deprives the yogurt of these cultures or bacteria.[4]  (*See, e.g.*, *id.* ¶ 33 (describing the yogurt powder process as one that is "highly processed and heat-treated").)  Because Plaintiff's claims are predicated upon the idea that the coating does not comply with the standard definition of yogurt, rather than that the yogurt powder in the coating did not derive from standardized yogurt, the claims as pled must be preempted.

## IV.   CONCLUSION

Because each of Plaintiff's claims is based on the allegation that Defendant violates state law because the Products are not covered with yogurt that conforms with the FDA's standard of identity for yogurt, the Complaint in its entirety is preempted by the FDA's guidance that yogurt-covered products are nonstandardized foods that need not be covered with conforming yogurt.  Therefore, the Court need not reach the parties' remaining

---

[3] The Court **GRANTS** Defendant's request for judicial notice as to the backside of the Products' packaging, which includes "yogurt powder" listed with the other ingredients.  (Mot. at 2 n.1.)  The Complaint refers to the ingredients list, it is central to Plaintiff's claim, and no party questions the authenticity of the version included in Defendant's Motion to Dismiss.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[4] Plaintiff's opposition to Defendant's motion explicitly states the yogurt powder is not derived from standardized yogurt (Opp'n at 5–6), but her Complaint does not (*see generally* Compl.).  Motions to dismiss are measured against the operative complaints and not the arguments.  *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." (citation omitted)).  Plaintiff may not amend her Complaint through briefing to insert allegations that do not appear in her Complaint.

arguments.  The motion to dismiss is **GRANTED**.  (ECF No. 12.)  However, Plaintiff may have a claim where the yogurt powder used in the Products' coating does not derive from yogurt.  Accordingly, amendment is not futile and Plaintiff shall be granted leave to amend. *Nat'l Funding, Inc.*, 817 F. App'x at 383.  If Plaintiff wishes to amend her Complaint, she must do so **on or before October 22, 2024**.

   **IT IS SO ORDERED.**

**DATED: October 1, 2024**

                 **Hon. Cynthia Bashant**
                 **United States District Judge**

24cv0714