1  **THE WAND LAW FIRM, P.C.**
2  Aubry Wand (SBN 281207)
   100 Oceangate, Suite 1200
3  Long Beach, CA 90802
4  Telephone: (310) 590-4503
   Email: awand@wandlawfirm.com
5
6  **FARUQI & FARUQI, LLP**
   Lisa Omoto (SBN 303830)
   1901 Avenue of the Stars, Suite 1060
7  Los Angeles, CA 90067
   Telephone: (424) 256-2884
8  Email: lomoto@faruqilaw.com
9  *Attorneys for Plaintiff and the Putative Classes*
10
11             **UNITED STATES DISTRICT COURT**
12           **SOUTHERN DISTRICT OF CALIFORNIA**
13
14  MARGARET MCGARITY, on behalf of       CASE NO.: 3:24-cv-00714-BAS-DEB
    herself and all others similarly situated,
15                                         **FIRST AMENDED CLASS
                  Plaintiff,              ACTION COMPLAINT**
16
17        v.                              1. Violation of California
                                             Consumers Legal Remedies Act
18  SUN-MAID GROWERS OF                   2. Violation of California False
    CALIFORNIA; and DOES 1 through 10,       Advertising Law
    inclusive,
19                                         3. Violation of California Unfair
                  Defendant.                 Competition Law
20                                         4. Breach of Express Warranty (Cal.
21                                            Com. Code § 2313)
                                           5. Breach of Implied Warranty (Cal.
22                                            Com. Code § 2314)
23                                         6. Intentional Misrepresentation
24
25                                         **DEMAND FOR JURY TRIAL**
26
27
28

Plaintiff Margaret McGarity and ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Sun-Maid Growers of California ("Sun-Maid" or "Defendant"), and Does 1 through 10, based on Sun-Maid's false and deceptive advertising and labeling regarding its yogurt-covered raisin products. Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## **INTRODUCTION**

1.    During the statute of limitations period, Sun-Maid has marketed, labeled, advertised, and sold its yogurt-covered raisin products (the "Class Products") to consumers with packaging that has prominently and unequivocally represented that they are yogurt covered raisins.

2.    The Class Products' packaging unequivocally states that the raisins are "Yogurt Covered" (the "*Yogurt Claim*").

3.    Reasonable consumers believe, based on the *Yogurt Claim*, that the Class Products are healthy snacks because they are raisins covered in yogurt (in some form), both of which are widely known as healthy foods. However, unbeknownst to consumers, there is not a single ingredient in the Class Products that is or ever was yogurt. Specifically, the "yogurt powder" in the Class Products is not derived from yogurt, as yogurt is defined under federal regulations, and as consumers commonly understand the term.

4.    According to the Food and Drug Administration ("FDA"), yogurt is produced by "culturing one or more of the basic dairy ingredients [including skim milk]…with a characterizing bacterial culture that contains the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus termophilus*." 21 C.F.R. § 131.200(a).  One or more "optional ingredients," including optional bacterial cultures (other than *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus termophilus*) may also be included. *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

5.      The "yogurt powder" in the Class Products is derived from cultured whey and nonfat milk.  These ingredients do not meet the FDA definition of yogurt because (1) the basic dairy ingredient, *i.e*, nonfat milk, is not cultured, and (2) the whey is cultured with an "optional" bacterial culture rather than the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*.[1]  Thus, the "yogurt powder" in the Class Products is not derived or made from yogurt.

6.      Even if the *optional* bacteria in the "yogurt powder" provided any health benefits, the Class Products provide no meaningful benefits because the cultured whey is a sub-ingredient of a flavored candy shell, which is predominantly sugar and hydrogenated palm kernel oil. Further, the amount of "yogurt powder" in the candy coating de minimis. Therefore, the Class Products are more akin to candies such as Raisinets and Tootsie Rolls than they are to the healthy snack that Sun-Maid markets them as.

7.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively labeled Class Products during the statute of limitations period (beginning four years prior to the date that this Complaint was originally submitted to the court for filing on February 9, 2024), for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express and implied warranty (Cal. Com. Code §§ 2313-2314), and intentional misrepresentation (i.e., common law fraud).

---

[1] *See* Defendant's Reply in Support of Motion to Dismiss, ECF No. 14 at 4, n. 1 (admitting that yogurt is not an ingredient of the yogurt powder and that the cultures in the cultured whey are the "optional ingredients" in 21 C.F.R. § 131.200(d)).

FIRST AMENDED CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

9.      This Court has personal jurisdiction over Defendant because Sun-Maid is a California cooperative that is qualified to do business in California and regularly conducts business in California. Defendant has distributed the Class Products throughout California, including in this County.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Sun-Maid regularly conducts business throughout this County. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this County. Plaintiff resides in this County, and she purchased Sun-Maid's yogurt covered raisins in this County within the statute of limitations period.

## PLAINTIFF

11.      Plaintiff is a citizen of the United States and the State of California. She currently resides in Dulzura, California.

12.      In or around August 2022, Plaintiff purchased a six-box package of Sun-Maid's Vanilla Yogurt Covered Raisins at a Walmart in La Mesa, California for which she recalls paying between $2 to $4. Plaintiff saw and relied on the *Yogurt Claim* in making this purchase. More specifically, Plaintiff reasonably believed, based on the *Yogurt Claim*, that she was buying raisins that were in fact covered with yogurt. This belief was an important part of her decision to purchase the product. Had Plaintiff known that the product is a candy-coated raisin that is merely vanilla yogurt-flavored, she would not have purchased the product, or she would have paid less for it. Thus,

Plaintiff has suffered injury in fact and lost money as a result of Sun-Maid's misleading, false, unfair, and deceptive practices, as alleged herein.

13.    Although Plaintiff currently believes that the Class Products are not made with yogurt as represented, she cannot trust any of Sun-Maid's representations, and she lacks personal knowledge as to the specific conditions under which Sun-Maid manufactures the Class Products. Therefore, even though Plaintiff would like to continue purchasing the Class Products if she knew that they were made with yogurt, Plaintiff will for the time being refrain from doing so. This is a tangible and ongoing harm to Plaintiff that cannot be rectified absent an injunction.

## **DEFENDANT**

14.    Sun-Maid, directly and/or through its agents, marketed, advertised, and sold dried fruit snacks, including the Class Products, across the nation, at all times during the statute of limitations period.

15.    On information and belief, the operations and conduct relevant to the allegations and claims in this Complaint predominately emanate from California.

16.    Sun-Maid has maintained significant contacts in California, having started in the San Joaquin Valley in 1912. Sun-Maid is comprised of 750 grower families with vineyards in California's Central Valley.

17.    Sun-Maid is a California cooperative that maintains its principal place of business and headquarters at 6795 N. Palm Ave., 2nd Floor, Fresno, California, 93704-1088.

18.    Sun-Maid's factory is in Kingsburg, California.

19.    On information and belief, Sun-Maid's executive management team is based in, and works out of, these headquarters. On further information and belief, all relevant operations and business policies and practices were created, designed, contracted, implemented, modified, and/or maintained in California.

20.    For example, Sun-Maid directs all corporate affairs to its Fresno headquarters.[2]

21.    In 2021, Sun-Maid rolled out a marketing campaign called "Imagine That," which was conceived, designed, and implemented by officers working at Sun-Maid's Fresno headquarters.

22.    In addition to producing the Class Products in California, Sun-Maid made the decision to advertise the Class Products as healthy yogurt snacks, and label the Class Products with the *Yogurt Claim*, in California.

23.    Plaintiff and Class members would not have purchased the Class Products, or would have paid less for them, had they known that the *Yogurt Claim* is false and deceptive. Therefore, they have suffered injury in fact and lost money as a result of Sun-Maid's unlawful conduct, as alleged herein, and the economic injury suffered by Plaintiff and Class members was caused by Sun-Maid's policies and practices that originated from its headquarters in Fresno, California.

24.    On further information and belief, Sun-Maid maintains no offices or locations outside of California. Thus, all the unlawful conduct alleged herein emanated from California.

25.    Based on these facts, extraterritorial application of California laws to the Class is appropriate. *See*, *e.g.*, *Wershba v. Apple Computer, Inc*., 110 Cal. Rptr. 2d 145, 159 (2001) (certifying nationwide class based on violation of Cal. Bus. & Prof. Code § 17500 because the defendant was a "California corporation" and the brochures containing the purported misrepresentations "were prepared in and distributed from California."); *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127-CW, 2013 WL 3829653, *7 (N.D. Cal. July 23, 2013) (holding California consumer protection law applied to non-residents where wrongful conduct originated from California); *Wang*

---

[2] https://www.sunmaid.com/contact-us/corporate-contact/ (last accessed October 21, 2024).

*v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011) (holding that California law could apply to a nationwide class because "[t]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [the defendant's] headquarters in California.'").

26. Alternatively, the Court can and should address choice-of-law issues at the class certification stage. *See*, *e.g.*, *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012) (issues regarding the assertion of nationwide class claims "boil down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage.").

27. The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. On information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff's and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.    The Class Products**

28. The Class Products consist of Sun-Maid raisins that have been sold with packaging that has borne the *Yogurt Claim*, including but not limited to, Vanilla Yogurt Covered Raisins and Strawberry & Vanilla Yogurt Covered Raisins.

29. The Class Products are generally sold in packages containing six 1 oz. boxes. They are also sold in 8 oz. bags. The *Yogurt Claim*, however, is prominently displayed in the same manner across all package sizes and types.

30.     Representative images are set forth below:





## B.   The *Yogurt Claim* is False and Deceptive

31.     As can be seen from the above images, the *Yogurt Claim* conveys the unequivocal message that the Class Products are covered with yogurt (in some form).

32.     However, the Class Products are not covered with yogurt. To the contrary, they are coated with a highly-processed candy coating.

33.     In the ingredients section in fine print for the Vanilla Yogurt Covered Raisins it states:

INGREDIENTS: VANILLA YOGURT FLAVORED COATING (SUGAR, HYDROGENATED PALM KERNEL OIL, NONFAT MILK POWDER, YOGURT POWDER (CULTURED WHEY AND NONFAT MILK), WHEY POWDER, COLOR ADDED (TITANIUM DIOXIDE), SOY LECITHIN-AN

EMULSIFIER, AND VANILLA), CALIFORNIA RAISINS, TAPIOCA DEXTRIN, CONFECTIONER'S GLAZE.

34.    In the ingredients section in fine print for the Strawberry & Vanilla Yogurt Covered Raisins it states:

INGREDIENTS: FLAVORED COATINGS (SUGAR, HYDROGENATED PALM KERNEL OIL, NONFAT MILK POWDER, YOGURT POWDER (CULTURED WHEY, NONFAT MILK), WHEY POWDER, COLOR ADDED (TITANIUM DIOXIDE, ANNATTO, VEGETABLE JUICE), SOY LECITHIN-AN EMULSIFIER, NATURAL FLAVOR, VANILLA), RAISINS, TAPIOCA DEXTRIN, CITRIC ACID, CONFECTIONER'S GLAZE.

35.    The ingredient list for the Vanilla Yogurt Covered Raisins states that the raisins have a "vanilla yogurt flavored coating" while the ingredient list for the Strawberry & Vanilla Yogurt Covered Raisins states that the raisins have "flavored coatings."[3]

36.    The "yogurt powder" in the flavored coatings is not derived from yogurt, as yogurt is defined under federal regulations, and as consumers commonly understand the term.

37.    The Federal Food, Drug & Cosmetic Act ("FDCA") regulates the sale of food and beverages to the consuming public. 21 U.S.C.A. § 301. The Act was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling.

---

[3] This is not a valid disclaimer. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Brady v. Bayer Corp*., 237 Cal. Rptr. 3d 683, 692–93 (Ct. App. 2018) (approving *Williams* and stating that "a back label ingredients list that conflicted with, rather than confirming, a front label claim could not defeat an action"). Moreover, assuming *arguendo* that a reasonable consumer reads the ingredient list in fine print on the back of the product, it would not put a reasonable consumer on notice that the Class Products are not made with yogurt.

38.    The FDCA and its implementing regulations have identified the words and statements that must or may be included on labeling, and they have specified how prominently and conspicuously those words and statements must appear. These provisions, known as "Standards of Identity," ensure that statements are presented on labels in such a way as to likely be read and understood by the ordinary individual under customary conditions of purchase and use. 21 U.S.C. § 343(f).

39.    The FDCA's definition of yogurt is thorough, and it breaks down specifications based on the type of dairy used, the amount of milkfat contained in the finished product, etc. It provides, in part, "Yogurt is the food produced by culturing one or more of the basic dairy ingredients specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains *the* lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus and Streptococcus thermophilus*. 21 C.F.R. § 131.200(a) (emphasis added).

40.    Yogurt is made by adding the lactic acid-producing bacteria *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus* to a basic dairy ingredient to ferment it. Thus, one of the primary health benefits associated with yogurt is that it contains active cultures with bacteria—known as probiotics—that is beneficial for gut health.[4]

41.    The live cultures are the source of one of the primary health benefits of yogurt. The health and nutritional benefits from lactic acid bacteria include improved digestion of lactose and control of intestinal infections, some types of cancer, and serum cholesterol levels.[5]

_____

[4] https://www.medicalnewstoday.com/articles/295714 (last accessed October 21, 2024).

[5] "Reconstituted yogurt from yogurt cultured milk powder mix has better overall characteristics than reconstituted yogurt from commercial yogurt powder", Lijie Song, Kayanush J. Argana,

42.     According to the FDCA, *in addition* to *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*, yogurt may also contain one or more "optional ingredients," including optional bacterial cultures. 21 C.F.R. § 131.200(d)(1).

43.     Reasonable consumers believe that the raisins are covered in yogurt (in some form).

44.     However, the Class Products do not contain any yogurt.[6] Instead, they contain a "yogurt powder" which is derived from cultured whey and nonfat milk. These ingredients do not meet the FDCA definition of yogurt because (1) the basic dairy ingredient, *i.e*, nonfat milk, is not cultured, and (2) the whey is cultured with "optional" bacterial cultures rather than the lactic acid-producing bacteria *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*.[7]

45.     Thus, the Class Products do not contain yogurt in any form, rendering the *Yogurt Claim* false and deceptive.

46.     On March 21, 2014, Philip Spiller, the then Acting Director of the Office of Nutrition, Labeling and Dietary Supplements, Center for Food Safety and Applied Nutrition, sent an informational letter to Sun-Maid, which states in pertinent part that:

> Furthermore, in the ingredient statement of each product, the "yogurt powder" is a sub-ingredient of a "yogurt coating" ingredient. Based on this information, an example of a more appropriate statement of identity for each product appears to be "Vanilla Yogurt-Flavored Covered Raisins" and "Vanilla Yogurt-Flavored Coated Covered Cherries."

*See* **Exhibit A**.

---

https://www.sciencedirect.com/science/article/pii/S0022030214005748 (last accessed October 21, 2024).

[6] *See* Defendant's Motion to Dismiss, ECF No. 12-1 ("Sun-Maid does not make a raisin product covered with fresh yogurt containing live cultures.").

[7] *See* Defendant's Reply in Support of Motion to Dismiss, ECF No. 14 at 4, n. 1.

47.    In other words, Sun-Maid should include the text "Vanilla Yogurt-Flavored Covered Raisins" on the consumer facing front label of its product package. The Class Products do not contain that text as shown *supra* ¶ 30.

48.    Because the "yogurt powder" is comprised of cultured whey and non-fat milk, it does not have (and never had) a basic dairy ingredient cultured with the characteristic lactic acid-producing bacteria (*Lactobacillus delbrueckii subsp. bulgaricus and Streptococcus thermophilus*) required to classify it as yogurt, as this term is commonly understood by consumers or as defined under federal regulations. Further, the amount of "yogurt powder" in the candy coating covering the raisins is de minimis such that any meaningful health benefits that could be attributable to the "optional" bacterial cultures are nonexistent.

49.    Indeed, most of the ingredients in the Class Products are unhealthy and unnatural, as explained below:

- There is added sugar, which speaks for itself.
- There is confectioner's glaze made from shellac, which is derived from resin scraped from the branches of trees left from when an insect creates a hard, waterproof cocoon. It is commonly used as a glaze in several candy products, including candy corn, Whoppers, Raisinets, Milk Duds, Tootsie Rolls, Sugar Babies, and Junior Mints.
- Hydrogenated palm kernel oil, as the name suggests, is oil derived from palm fruit that is then combined with hydrogen. It is not a natural oil. It is often added to food to preserve consistency. It is considered dangerous because it is in high in saturated fats.[8]
- Titanium dioxide is a manufactured chemical that is often used as a pigment in paint, sunscreen, and food coloring. In this case, it is added to make the yogurt

---

[8] Almost all the fat in the product is from saturated fat found in processed ingredients such as the hydrogenated palm kernel oil.

FIRST AMENDED CLASS ACTION COMPLAINT

flavored coating white. Titanium dioxide is a known carcinogen. It is on the list banned of banned substances under California's Proposition 65.

- Soy lecithin is a food additive derived from soy and is often used as an emulsifier (i.e., to prevent fats and oils and from mixing with other substances) in foods, as is the case here. Soy lecithin may be considered harmful, but at a minimum it is an unnatural ingredient that does not provide any health benefits.

- Tapioca dextrin is a starch that acts as an adhesive coating for candy, snack and vegetable, and meat substrates. It is also it is an unnatural ingredient that does not provide any health benefits.

50.     None of the ingredients that make up the flavored coating, or the yogurt powder, constitute real yogurt. Several of them are unnatural and at least one of them is a potential carcinogen. Holistically, the flavored coating is an unhealthy candy coating, not an actual yogurt coating. The ingredients are similar to those found in Candy Coated Tootsie Roll Snowballs.[9]

51.     Thus, the *Yogurt Claim* is false under federal regulations and it is deceptive because it misleads reasonable consumers into believing the Class Products are healthy yogurt snacks. Conversely, reasonable consumers do not expect, based on *Yogurt Claim*, that the Class Products are coated with a highly-processed candy coating that contains no yogurt and never contained any yogurt.

**C.    The *Yogurt Claim* is Material**

52.     Consumers prefer to purchase and eat healthy foods and are willing to pay a premium on foods marketed and labeled as being healthy.[10]

---

[9] Both the Tootsie Roll product and the Class Products contain added sugar, palm oil, whey, titanium dioxide, soy lecithin, and tapioca dextrin.

[10] *See*, *e.g.*, Nancy Gagliardi, "Consumers Want Healthy Foods—And Will Pay More For Them," Forbes (Feb. 18, 2015) ("88% of those polled are willing to pay more for healthier foods")
https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-

53.    Because of its reputation as a health food, there is a "health halo" surrounding the presence of yogurt in a product. The health halo effect is the act of "overestimating the healthfulness of an item based on a single claim, such as being low in calories or low in fat."[11] Over the past two decades, the yogurt industry has boomed into prominence, estimated to be worth over 14 billion dollars by 2024.[12]

54.    In recent years, Sun-Maid has incorporated a line of "yogurt-covered products" to exploit the "health halo" effect of yogurt, in effect combining yogurt with raisins to convey the notion that the Class Products are an extremely healthy fruit-covered yogurt snack that also tastes great.[13]

55.    Indeed, Sun-Maid is also well-aware that consumers prefer healthy snack products—i.e., that the *Yogurt Claim* is material. This message is evident from Sun-Maid's off-label marketing. For example, Sun-Maid provides information regarding the health benefits of the Class Products on its website. It has touted raisins as "antioxidant powerhouses" and a "healthy snack" and described its Vanilla Yogurt Covered Raisins as "raisins wrapped in a creamy blanket of vanilla yogurt—perfect

---

foods-and-will-pay-more-for-them/?sh=67a817b975c5 (last accessed October 21, 2024).

[11] *See* "The health halo: how good PR is misleading shoppers," John Peloza and William Montford, https://www.theguardian.com/sustainable-business/2015/mar/11/know-what-you-eat-health-halo#:~:text=The%20health%20halo%20effect%20refers,the%20overconsumption%20of%20certain%20foods (last accessed October 21, 2024).

[12] *See* https://thecounter.org/the-yogurt-industry-is-expected-to-reach-14-5-billion-by-2024/ (last accessed October 21, 2024)

[13] Related claims, including "Non GMO," which bolster the reasonable belief that the Products are healthy yogurt snacks, are also prominently printed on the front packaging.

for a health, on-the-go snack that's got your cravings covered" on its website during the statute of limitations period:[14]



<hr>

[14] Although Plaintiff is not alleging that consumers rely on Sun-Maid's website representations, they nonetheless reveal Sun-Maid's belief that the *Yogurt Claim* is material, and the intent to exploit the health halo of yogurt.

56.    Further propagating the misconception that the Class Products are healthy yogurt snacks is the fact that they are generally placed in the healthy snack aisle of the grocery store—i.e., where nuts and dried fruits are sold—not the candy aisle where Raisinets are sold.

57.    Similarly, while shopping online, the Class Products are sold under the "Direct Fruits" section at Vons and Pavilions,[15] the "Health Kids Snacks" section at Walmart,[16] and the "Dried Fruit & Raisins" section at Target.[17]

58.    In 2019, Sun-Maid launched a marketing campaign "to drive consumer awareness of the new reformulation. The overarching message is that Yogurt Covered Raisins are a whole fruit snack and permissible indulgence that kids will crave and moms will approve."[18]

59.    A corollary product is chocolate covered raisins. For example, Raisinets, and other candy covered raisin brands have additives similar to the Class Products, such as soy lecithin and tapioca dextrin. Raisinets are known as candy and are not advertised or labeled otherwise. For example, they are sold in the candy aisle of the grocery store with other equally unhealthy products such as Candy Coated Tootsie Roll Snowballs. However, when you compare Raisinets, Candy Coated Tootsie Roll Snowballs, and the Class Products, their nutritional value is materially the same—i.e., they are all equally bad for your health.

---

[15] https://www.vons.com/shop/product-details.184740172.html (last accessed October 21, 2024).

[16] https://www.walmart.com/ip/Sun-Maid-Yogurt-Raisins-Strawberry-Vanilla-Dried-Fruit-Healthy-Snack-1-oz-6-Ct/315136034?wl13=2226&selectedSellerId=0 (last accessed October 21, 2024)

[17] https://www.target.com/p/sun-maid-strawberry-vanilla-yogurt-raisins-6ct/-/A-82237797#lnk=sametab (last accessed October 21, 2024).

[18] Sun-Maid, Cision PR Newswire, "Sun-Maid Revamps its Yogurt Covered Raisins to Better Appeal to Millennials." https://www.prnewswire.com/news-releases/sun-maid-revamps-its-yogurt-covered-raisins-to-better-appeal-to-millennials-300913394.html (last accessed October 21, 2024).

60.    As set forth in the following chart, Raisinets, Candy Coated Tootsie Roll Snowballs, and the Vanilla Yogurt Covered Raisins contain similar nutritional content: [19]

| Serving | Raisinets Dark Chocolate | Candy Coated Tootsie Roll Snowballs | Sun-Maid Vanilla Yogurt Covered Raisins |
|---|---|---|---|
| Calories | 110 | 110; 85.14 | 120; 102.84 |
| Fat | 4.5g | 2g; 1.55g | 5g; 4.29 |
| Sodium | 0 | 5mg; 3.87mg | 15mg; 12.86mg |
| Fiber | 1g | N/A | <1g; < 0.86g |
| Total Sugars | 14g | 17g; 13.16g | 17g; 14.57g |
| Added Sugars | 13g | 17g; 13.16g | 9g; 7.71g |
| Protein | 1g | 0g; 0g | <1g; < 0.86g |

61.    Consumers purchased, and continue to purchase, the Class Products in part because the *Yogurt Claim* conveys the unequivocal message that they are natural and healthy yogurt covered raisins. Plaintiff and Class members would have paid less for the Class Products, or they would not have purchased them at all, but for the *Yogurt Claim*. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium that the Class Products command in the market as a result of Sun-Maid's representations that they are covered with yogurt.

---

[19] These nutritional values are based on 24g for Raisinets, 31g for Tootie Rolls, and 28g for the Vanilla Yogurt Covered Raisins. Accordingly, the values have also been adjusted so that they are all based on a 24g serving size – i.e. the Vanilla Yogurt Covered Raisins are multiplied by 85.7% and the Tootsie Roll products are multiplied by 77.4%.

## **CLASS ACTION ALLEGATIONS**

62.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All natural persons who purchased at least one of the Class Products in the United States within the applicable statute of limitations period.

**California Class**

All natural persons who purchased at least one of the Class Products in the state of California within the applicable statute of limitations period.

**California Consumer Subclass**

All natural persons who purchased at least one of the Class Products in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period.

63.    Excluded from the Classes are the following individuals and/or entities: Sun-Maid and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Sun-Maid has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

64.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

65.    Plaintiff is a member of the Nationwide Class and the California Subclasses.

66.    Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. Class Products is sold throughout the United States and the State of California. The number of individuals who purchased Class Products

during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

67.    <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      a.    Whether Sun-Maid misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Class Products;

      b.    Whether Sun-Maid's use of challenged packaging constituted false or deceptive advertising;

      c.    Whether Sun-Maid engaged in unfair, unlawful and/or fraudulent business practices;

      d.    Whether Sun-Maid's unlawful conduct, as alleged herein, was intentional and knowing;

      e.    Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

      f.    Whether Sun-Maid is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

      g.    Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

68.    Sun-Maid has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact,

namely, Sun-Maid's deceptive packaging and advertising of Class Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as (a) the packaging of Class Products bears the same material *Yogurt Claim*, and (b) the Class Products do not meet this representation of fact. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

69.    <u>Superiority</u>: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

70.    <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Sun-Maid's uniform unlawful conduct as alleged herein.

71.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

72.    Sun-Maid has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

///

///

///

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
(***For the Nationwide Class and California Consumer Subclass***)

73.     Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Sun-Maid pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

75.     The Class Products are a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Class Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

76.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Class Products with their current packaging, Sun-Maid has represented and continues to represent that the Class Products have characteristics (i.e., covered with yogurt in some form) that they do not have. Therefore, Sun-Maid has violated section 1770(a)(5) of the CLRA.

77.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Class Products with their current packaging, Sun-Maid has represented and continues to represent that the Class Products are of a particular standard (i.e., covered with yogurt in some form) which they do not possess. Therefore, Sun-Maid has violated section 1770(a)(7) of the CLRA.

78.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Class Products as raisins covered with yogurt, but not intending to sell Class Products as such (i.e., selling them

with the knowledge that they are covered with highly-processed yogurt-flavored candy coating), Sun-Maid has violated section 1770(a)(9) of the CLRA.

79.    At all relevant times, Sun-Maid has known or reasonably should have known that its *Yogurt Claim* on the Class Products' packaging is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on it when purchasing the Class Products. Nonetheless, Sun-Maid persisted in making the *Yogurt Claim* on the Class Products' labels in order to deceive consumers into believing they are buying a healthy snack with yogurt, as opposed to a candy-coated raisin.

80.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Sun-Maid's misleading *Yogurt Claim* when purchasing the Class Products. Moreover, based on the materiality of Sun-Maid's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

81.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Sun-Maid because they would have paid less for the Class Products, or would not have purchased them at all, had they known that the *Yogurt Claim* was untrue.

82.    On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Sun-Maid received this notice and demand letter on February 14, 2024.

83.    Because Sun-Maid has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after Sun-Maid received the foregoing notice and demand letter, Plaintiff is timely filing this Complaint for damages, as permitted under Cal. Civ. Code § 1782(d). Plaintiff also requests that this Court enjoin Sun-Maid from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future. Plaintiff also requests

an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

84.    Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

### SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500*, et seq***
***(For the Classes)***

85.    Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

86.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

87.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

88.    Sun-Maid has represented and continues to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive packaging, that the Class Products are covered with yogurt (in some form). Because Sun-Maid has disseminated misleading information regarding Class Products, and Sun-Maid knows, knew, or should have known, through the exercise of reasonable care, that the *Yogurt Claim* is misleading, Sun-Maid has violated the FAL.

89.    As a result of Sun-Maid's false advertising, Sun-Maid has and continues to unlawfully obtain money from Plaintiff and members of both Classes. Plaintiff therefore requests that the Court cause Sun-Maid to restore this fraudulently obtained

money to them and members of the proposed Classes, to disgorge the profits Sun-Maid made on these transactions, and to enjoin Sun-Maid from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Classes*)**

90.    Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

91.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

92.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

93.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Sun-Maid's false and misleading advertising of Class Products was and continues to be "unlawful" because it violates, *inter alia*, the CLRA and the FAL. As a result of Sun-Maid's unlawful business acts and practices, Sun-Maid has unlawfully obtained money from Plaintiff, and members of the proposed Classes.

94.    Under the UCL, a business act or practice is "unfair" if the Sun-Maid's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Sun-Maid's conduct was and continues to be of no benefit to purchasers of the Class Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing the Class Products are raisins covered

with yogurt, in some form, when they are candy-coated raisins with yogurt flavor, is of no benefit to consumers. Therefore, Sun-Maid's conduct was and continues to be "unfair." As a result of Sun-Maid's unfair business acts and practices, Sun-Maid has and continues to unfairly obtain money from Plaintiff, and members of the proposed Classes.

95.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Sun-Maid's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Class Products are raisins covered with yogurt (in some form), when they are candy-coated raisins with yogurt flavor. Because Sun-Maid misled Plaintiff and members of both Classes, Sun-Maid's conduct was "fraudulent." As a result of Sun-Maid's fraudulent business acts and practices, Sun-Maid has and continues to fraudulently obtain money from Plaintiff and members of the proposed Classes.

96.    Plaintiff requests that the Court cause Sun-Maid to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed Classes, to disgorge the profits Sun-Maid made on these transactions, and to enjoin Sun-Maid from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**California Commercial Code § 2313**
(*For the Classes*)

97.    Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

98.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

99.    California's express warranty statute provides that "(a) Any affirmation

-24-

of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

100.   Sun-Maid has expressly warranted on the Class Products' packaging that they are yogurt covered raisins through the *Yogurt Claim*.

101.   This representation about the Class Products is: (a) an affirmation of fact or promise made by Sun-Maid to consumers that Class Products are yogurt covered raisins; (b) became part of the basis of the bargain to purchase the Class Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Class Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Class Products is a description of goods which were made as part of the basis of the bargain to purchase the Class Products, and which created an express warranty that the Class Products would conform to the product description.

102.   Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Class Products did in fact conform to those warranties.

103.   Sun-Maid has breached the express warranties made to Plaintiff and members of the proposed Classes by failing to produce the Class Products in accordance with the *Yogurt Claim*, as expressly warranted on the packaging.

104.   Plaintiff and members of the proposed Classes paid a premium price for the Class Products but did not obtain the full value of the Class Products as represented. If Plaintiff and members of the proposed Classes had known of the true nature of the Class Products, they would not have been willing to pay the premium price charged in the market. As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

105.   On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims for breach of express and implied warranty and the factual basis for those claims. This letter was sent within one month of when Plaintiff first discovered the facts giving rise to her claims.

## FIFTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### California Commercial Code § 2314(2)(f)
### (*For the Classes*)

106.   Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

107.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

108.   California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

109.   California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

110.   Sun-Maid is a merchant with respect to the sale of the Class Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Class Products to California consumers.

111.   By advertising the Class Products with their current packaging, Sun-Maid made an implied promise that the Class Products are made with yogurt (in some form), such that they would provide actual health benefits. The Class Products do not, however, "conform to the promises…made on the container or label" because they do not possess any actual yogurt, and they never did. Further, the yogurt-flavored coating is chock full of sugar and saturated fat. Plaintiff, as well as

FIRST AMENDED CLASS ACTION COMPLAINT

consumers, did not receive the goods as impliedly warranted by Sun-Maid to be merchantable.

112.    Therefore, the Products are not merchantable under California law and Sun-Maid has breached its implied warranty of merchantability with respect to the Class Products.

113.    If Plaintiff and members of the Nationwide Class and California Subclass had known that the Products were not made with real yogurt (in some form), they would not have been willing to pay the premium price associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Sun-Maid's breach, Plaintiff and members of the Nationwide Class and California Subclass have suffered injury and deserve to recover all damages afforded under the law.

114.    On February 8, 2024, Plaintiff, by and through her counsel, sent a notice and demand letter to Sun-Maid of her intent to pursue claims for breach of express and implied warranty and the factual basis for those claims. This letter was sent within one month of when Plaintiff first discovered the facts giving rise to her claims.

## SIXTH CLAIM FOR RELIEF
### Intentional Misrepresentation
*(for the Classes)*

115.    Plaintiff repeats the allegations contained in paragraphs 1-72 above as if fully set forth herein.

116.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Sun-Maid.

117.    Sun-Maid marketed the Class Products in a manner indicating that they are yogurt covered raisins. Therefore, Sun-Maid has made misrepresentations about the Class Products.

118.    The *Yogurt Claim* is material to a reasonable consumer because it relates to the quality and healthfulness of the Class Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing

decisions with respect to fruit and yogurt covered snacks.

119.    At all relevant times, Sun-Maid knew that the *Yogurt Claim* was misleading. Sun-Maid intends for Plaintiff and other consumers rely on the *Yogurt Claim*, as evidenced by Sun-Maid intentionally and conspicuously placing it on the packaging of the Class Products. This can also be seen in Sun-Maid's marketing campaign. In the alternative, Sun-Maid acted recklessly in making the *Yogurt Claim* without regard to the truth.

120.    Plaintiff and members of the proposed Classes have reasonably and justifiably relied on Sun-Maid's intentional misrepresentations (i.e., the *Yogurt Claim*) when purchasing the Class Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market.

121.    Therefore, as a direct and proximate result of Sun-Maid's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Class Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.    A declaration that Sun-Maid's actions, as described herein, violate the claims described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Sun-Maid obtained from Plaintiff and the proposed

Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including, *inter alia*, an order prohibiting Sun-Maid from engaging in the unlawful act described above;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Sun-Maid's conduct;

F.    An award of punitive damages;

G.    An award of nominal damages;

H.    An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

I.    An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: October 22, 2024

**THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand
    Aubry Wand

**FARUQI & FARUQI, LLP**
Lisa Omoto

*Attorneys for Plaintiff and the Putative Classes*