ANGELA M. SPIVEY (*pro hac vice*)
ANDREW G. PHILLIPS (*pro hac vice*)
JAMIE S. GEORGE (*pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777
E-mail:       angela.spivey@alston.com
                    andrew.phillips@alston.com
                    jamie.george@alston.com

JACOB T. SPAID
MOLLY H. TEAS
**HIGGS FLETCHER & MACK LLP**
401 West A Street, Suite 2600
San Diego, CA 92101
Telephone:  (619) 236-1551
Facsimile:   (619) 696-1410
E-mail:       spaidj@higgslaw.com
                    mhteas@higgslaw.com

*Attorneys for Defendant*
*Sun-Maid Growers of California*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET MCGARITY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUN-MAID GROWERS OF CALIFORNIA, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-00714-BAS-DEB<br><br>**DEFENDANT SUN-MAID GROWERS OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge:         Hon. Cynthia A. Bashant<br>Courtroom:  12B<br>Hearing:      March 24, 2025<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 3

   A.   Plaintiff Has Not Plausibly Alleged That the Yogurt Powder Is Not Derived from Yogurt Meeting the FDA's Standard of Identity ................................... 3

   B.   As Before, Each Claim in the FAC Rests on the Raisins Being Coated with a Product That Does Not Conform to Yogurt's Standard of Identity ................ 6

   C.   Plaintiff Has Not Plausibly Pled Consumers Would Be Materially Misled ... 7

   D.   Plaintiff's "Reasonable Consumer" Arguments Fail ...................................... 8

   E.   Plaintiff's Claims Fail for Additional, Independent Reasons ........................ 9

III. CONCLUSION ............................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Broussard v. Dole Packaged Foods, LLC*,
  No. 23-cv-03320, 2024 U.S. Dist. LEXIS 63935 (N.D. Cal. Apr. 8, 2024) ......10

*Hammock v. Nutramarks, Inc.*,
  No. 15-cv-2056, 2016 U.S. Dist. LEXIS 124240 (S.D. Cal. Sept. 12, 2016) ......9

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 F. App'x 700 (9th Cir. 2011) ...................................................................10

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ..........................................................................9

*Organic Cannabis Found., LLC v. Comm'r*,
  962 F.3d 1082 (9th Cir. 2020) .........................................................................4

*Shay v. Apple Inc.*,
  No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415 (S.D. Cal. May 3, 2021) .........10

*Spurck v. Demet's Candy Co.*,
  No. 21-cv-05506, 2022 U.S. Dist. LEXIS 133685 (S.D.N.Y. July 27, 2022) ..... 8

*Werbel v. Pepsico, Inc.*,
  No. 09-cv-04456, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 1, 2010) .........8

*William O. Gilley Enters. v. Atl. Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) ...........................................................................3

**REGULATIONS**

21 C.F.R. § 131.200 ...............................................................................................5

**OTHER AUTHORITIES**

USDA, "Food Data Central," https://fdc.nal.usda.gov/ ............................................4

Milk and Cream Products and Yogurt Products; Proposal to Revoke the Standards
  for Lowfat Yogurt and Nonfat Yogurt and to Amend the Standard for Yogurt,
  74 Fed. Reg. 2443 (Jan. 15, 2009) ..................................................................5

Milk and Cream Products and Yogurt Products; Final Rule To Revoke the Standards for Lowfat Yogurt and Nonfat Yogurt and To Amend the Standard for Yogurt, 86 Fed. Reg. 31117 (June 11, 2021)..........................................5, 8, 9

## I.  INTRODUCTION

This Court previously dismissed Plaintiff's claims as preempted because "[e]ach claim in Plaintiff's Complaint rests on Defendant's raisins being coated by a product that does not conform to the standard of identity for yogurt," but "the FDA, in interpreting its own regulations under the FDCA, does not require 'yogurt-coated' products to conform with that standard of identity." (ECF No. 15 or "Order" at 6.) The Court noted that the FDA does require that yogurt-covered products "be coated with a product containing yogurt powder derived from dried yogurt that conforms with the standard of identity for yogurt." (*Id.* at 7.) Accordingly, the Court left the window cracked for Plaintiff to file an amended complaint: Plaintiff *might* have a claim, *if* she could plausibly allege that the yogurt powder used in the coating of Sun-Maid's raisins "does not derive from yogurt," where "yogurt" is defined, per the FDCA standard of identity, as the food produced by culturing a basic dairy ingredient with the two Lactic Acid Bacteria strains. (*Id.* at 2, 8.)

Plaintiff filed an amended complaint, alleging that "[t]he 'yogurt powder' in the Class Products is derived from cultured whey and nonfat milk," which she interpreted to mean that "[t]he basic dairy ingredient, *i.e.*, nonfat milk, is not cultured" as required under the FDA's standard of identity, and therefore "the 'yogurt powder' in the Class Products is not derived or made from yogurt." (ECF No. 18 or "FAC" ¶¶ 5, 33-34.) In other words, Plaintiff postulates that the phrase "cultured whey and nonfat milk" identifies two separate ingredients—(1) cultured whey and (2) nonfat milk—such that the nonfat milk is not cultured, and the yogurt powder is not derived from "yogurt" as defined by the FDA.

But Plaintiff apparently never conducted any investigation to determine whether her speculation was on-target. As confirmed in her Opposition brief, the *only* basis for her claim that the nonfat milk used in the yogurt powder is not cultured is "the Products'

ingredient list" and her distorted reading of a footnote in Sun-Maid's prior "briefing submitted to this Court" (ECF No. 31 or "Opp'n" at 4, 10-11)—which the Court had in hand when it previously found Plaintiff's claims were preempted. Had Plaintiff conducted even a cursory investigation, she would have realized the source she incorporated into her Complaint and FAC proves her speculation incorrect.[1] Sun-Maid previously raised this issue (ECF No. 28-1 or "MTD" at 5), and Plaintiff conspicuously failed to respond.

Not only did Plaintiff fail to vet her new theory, she also only minimally amended her complaint, changing some (but not all) "yogurt" references to "yogurt (in some form)." For example, she claims she would have paid less or not purchased the raisins if she knew the coating was not "made with real yogurt (in some form)." (FAC ¶ 113.) Setting aside the fact that other allegations remained unchanged (e.g., "Plaintiff reasonably believed . . . that she was buying raisins that were in fact covered with yogurt"—full stop (FAC ¶ 12)), Plaintiff's nominal amendments miss the mark. As the Court has made clear, "'yogurt-covered' products . . . need not be covered in 'yogurt,' as defined by the standard of identity." (Order at 2.) Regardless of the "form" of "real yogurt," yogurt-covered products need not be covered in it. "Rather, such nonstandardized products with 'yogurt' in the product name must contain yogurt powder that <u>derives</u> from yogurt." (*Id.* at 2-3.) But Plaintiff never alleges in her FAC, for example, that she would have paid less or not purchased the raisins if she knew the coating did not contain an ingredient, i.e., yogurt powder, "that <u>derives</u> from yogurt." (*Id.*) This is not a throwaway "semantical argument"

---

[1] *See* FAC ¶ 41 n.5 (citing Lijie Song *et al.*, "*Reconstituted yogurt from yogurt cultured milk powder mix has better overall characteristics than reconstituted yogurt from commercial yogurt powder*," 97:10 J. Dairy Sci. 6007 (2014) ("Plaintiff's Article") (stating yogurt powder is made from whey and nonfat milk mixed together and then cultured)).

as Plaintiff suggests. (Opp'n at 5.) This is a core issue in the case: if Plaintiff's entire theory of the case is that consumers were misled into believing the raisins were coated in a form of "yogurt"—any form—as defined by the FDA, then her claims remain preempted.[2]

## II. ARGUMENT[3]

### A. Plaintiff Has Not Plausibly Alleged That the Yogurt Powder Is Not Derived from Yogurt Meeting the FDA's Standard of Identity

The Court previously determined that Plaintiff's claims were preempted, but granted leave to amend in the event Plaintiff could plausibly allege that "the yogurt powder used in the Products' coating does not derive from yogurt." (Order at 8.) Plaintiff amended her complaint to conclusorily assert that "the 'yogurt powder' in the Class Products is not derived from yogurt, as yogurt is defined under federal regulations" (FAC ¶ 3), but she did not add any new factual allegations in support. In fact, Plaintiff has not provided the Court with any new information or material beyond what the Court previously had when it dismissed Plaintiff's Complaint. (Opp'n at 4 (confirming Plaintiff's only basis for claiming the yogurt powder does not derive from yogurt is the "Product's ingredient list" and Sun-Maid's prior "briefing submitted to this Court," both of which she interprets to mean that only the whey in the yogurt powder's "cultured whey and nonfat milk" is cultured).)

On the other hand, there is documentary evidence before the Court that contradicts Plaintiff's supposition that "cultured whey and nonfat milk" consists of cultured whey and (non-cultured) nonfat milk. Specifically, Plaintiff's Article explains that commercial

---

[2] Plaintiff's FAC suffers from multiple additional deficiencies, discussed briefly below, but the Court ultimately does not need to even reach those other arguments.

[3] Throughout her Opposition, Plaintiff relies on the pleading standard to defend her claims (*see, e.g.*, Opp'n at 1, 2, 5, 11, 12, 13), but does not even state the correct pleading standard, (*id.* at 2). The *Conley* no-set-of-facts test Plaintiff relies on was retired by *Twombly*. See *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 667 n.6 (9th Cir. 2009).

yogurt powder (CYP) consists of "whey and nonfat milk ***mixed together***, ***cultured***, and spray dried to obtain . . . nonfat yogurt powder."[4] Further, the USDA's comprehensive database of food composition data shows there are nearly 200 yogurt-covered products that contain, as an ingredient, "YOGURT POWDER (CULTURED WHEY AND NONFAT MILK)"—just like Sun-Maid's yogurt-covered raisins. See **Exhibit A**.[5] The reason, of course, is not because there is an industry-wide conspiracy to deprive consumers of cultured milk in their yogurt-coated products (while still providing cultured whey). Rather, "cultured whey and nonfat milk" means that a mixture of whey and nonfat milk has been cultured, as explained in Plaintiff's Article. Thus, the phrase "cultured whey and nonfat milk" in the ingredient list does not render Plaintiff's claim plausible.

The footnote in Sun-Maid's prior MTD Reply brief that Plaintiff desperately clings to likewise does not nudge her claims over the line of plausibility. Nor is it a "binding judicial admission" of fact. (Opp'n at 11.) That footnote begins: "The ingredient list shows that the ingredients in the yogurt powder are cultured whey and nonfat milk." (ECF No. 14 or "Reply" at 4 n.1.) This is true, and an undisputed fact concerning the product at issue. Next, the footnote explains, "Yogurt is not listed as an ingredient of the yogurt powder for the simple reason that yogurt is not an ingredient." (*Id.*) This is an explanation of why "yogurt" is not listed as an ingredient, and is consistent with the FDA's guidance. Then it states, "The yogurt standard of identity describes yogurt as 'the food produced by culturing one or more of the basic dairy ingredients specified in paragraph (b) of this section and any

---

[4] *See* FAC ¶ 41 n.5 (citing Plaintiff's Article (emphasis added)); *see also* ECF No. 1-2 or "Compl." ¶ 40 n.7 (same).

[5] USDA, "Food Data Central," *available at* https://fdc.nal.usda.gov/. The Court may take judicial notice of information posted on a government website. *See Organic Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082, 1096 (9th Cir. 2020).

of the optional dairy ingredients specified in paragraph (c),' as well as any of the 'other optional ingredients in paragraph (d).' 21 C.F.R. § 131.200(a)." (*Id.*) This is an accurate quotation of the FDA's standard of identity.

Next come the two sentences Plaintiff emphasizes in her attempt to spin the footnote into some sort "judicial admission." (*See* Opp'n at 10-11):

(1) "One of those basic dairy ingredients specified in paragraph (b) is milk. *See id.* § 131.200(b)." That is an accurate characterization of the regulation. If there is anything to extrapolate about the products at issue from the footnote, then this sentence—read with the prior sentence that yogurt is produced by **culturing** an ingredient specified in paragraph (b)—indicates the milk used in the coating is cultured.

(2) "Cultures, including cultured whey, is one of the other optional ingredients in paragraph (d). *See id.* § 131.200(d)." This is an accurate statement, albeit one lacking in nuance. Cultures that are in addition to the two Lactic Acid Bacteria specified in paragraph (a) are permissible optional ingredients under paragraph (d).[6] And "whey" used to be specifically listed as an optional ingredient under paragraph § 131.200(d)(1), (*see* 74 Fed. Reg. 2443, 2450 (2009)), before 21 C.F.R. § 131.200 was amended such that whey fell under paragraph (c)'s catchall provision for "[o]ther safe and suitable milk-derived ingredients," (*see* 86 Fed. Reg. 31117, 31126 (2021)). Code sections aside, this sentence is a description of the regulatory scheme, not a factual representation about the products at issue.

It is critical to note what these sentences do not say. They do not say that the nonfat milk used in Sun-Maid's raisin coating is not cultured. They do not say that the only cultures used in the coating are optional cultures referred to in § 131.200(d). They do not say anything about the specific cultures used in the products at all. These sentences are lawyer argument about how the regulation works. There is no factual representation about the products themselves.[7] Plaintiff has no reasonable or plausible basis for claiming the raisins' coating does not contain a basic dairy ingredient cultured with the Lactic Acid Bacteria.

---

[6] Although outside the scope of this MTD, the coating here contains the **optional** bacteria *Lactobacillus delbrueckii subsp. lactic* **in addition to** the two Lactic Acid Bacteria.

[7] Nor is there any factual representation regarding the product at issue in the final sentence of the footnote, a general statement about yogurt and yogurt powder (which is also true).

### B. As Before, Each Claim in the FAC Rests on the Raisins Being Coated with a Product That Does Not Conform to Yogurt's Standard of Identity

It is evident from both Plaintiff's FAC and her Opposition that her theory of the case remains preempted. In her FAC, she claims that she "believed, based on the *Yogurt Claim*, that she was buying raisins that were in fact covered with yogurt. This belief was an important part of her decision to purchase the product." (FAC ¶ 12.) Not only is that word-for-word what Plaintiff alleged in her initial complaint (Compl. ¶ 8.), it is proof positive that she cannot assert a non-preempted claim. Her expectation was that she was buying raisins that were covered in "yogurt," a term she equates with the FDA's standard of identity. (Opp'n at 4.) Thus, the manner in which she was deceived, the extent to which she relied on the challenged representation, and the difference between what she claims she bargained for versus what she received are all tied to her expectation that she was buying raisins that were in fact covered with yogurt, as defined by the FDA. The result? "Each claim in Plaintiff's [FAC] rests on Defendant's raisins being coated by a product that does not conform with the standard of identity for yogurt." (Order at 15.)

Plaintiff attempts to maneuver around her own deficient pleading with several arguments, none of which are availing. *First*, she asserts that her case is not about whether the raisin coating violates the standard of identity for yogurt; instead, she is simply claiming that the "Yogurt Claim" is false and deceptive in violation of California law. (Opp'n at 3-6.)[8] But it doesn't matter how Plaintiff characterizes her claims. If she is trying to use state law to impose requirements "different from or in addition to the FDCA's requirements," then her claims are preempted. (MTD at 8.) Thus, whether the products conform to the

---

[8] Of course, elsewhere, she admits that "this motion turns on a technical issue of whether federal Food, Drug, & Cosmetic Act ('FDCA') regulations relating to the yogurt standard of identity preempt Plaintiff's consumer protection claims. (Opp'n at 1.)

standard of identity for yogurt is *the* critical issue in the case at this juncture.

*Second*, she asserts her claims are no longer preempted because she added the phrase "in some form" after "yogurt" in some of her allegations. (Opp'n at 5-6.) But the FDA regulations do not require yogurt to be present in **any form**. (MTD at 10.) Plaintiff dismisses this as a "semantical argument." (*Id.* at 5.) The problem for Plaintiff is that she has brought a case that turns entirely on whether a product meets a specific definition. Semantics—linguistic meaning—therefore matter. Moreover, in her brief, she claims that a yogurt-coated product "[(1)] must be coated with an ingredient that was 'yogurt,' as defined under the yogurt standard of identity, *at some point* during its production, **and** [(2)] the end-product must contain yogurt in some form." (Opp'n at 1 (bold added).) In so arguing, Plaintiff makes clear that when she says a product must contain yogurt "in some form," she means something different than that the product must include an ingredient that initially began as yogurt that satisfies the standard of identity. The first requirement (containing an ingredient derived from yogurt) is part of the FDA's definition. The second requirement (the end product containing yogurt "in some form") is not, so Plaintiff is trying to impose a requirement different from federal law and her claims are preempted.

*Third*, she claims that reasonable consumers expect that "the Products will contain a basic dairy ingredient that was cultured with the requisite Lactic Acid Bacteria." Plaintiff is yet again trying to "amend her Complaint through briefing to insert allegations that do not appear in her Complaint." (Order at 7.) Her FAC only alleges that reasonable consumers "believe that the raisins are covered in yogurt (in some form)." (FAC ¶ 43.) She never alleges consumers had expectations about specific ingredients in the yogurt coating.

**C.  Plaintiff Has Not Plausibly Pled Consumers Would Be Materially Misled**

As explained in Sun-Maid's MTD, while the defining characteristic of yogurt is the

presence of Lactic Acid Bacteria, yogurt powder (according to the FAC) does not contain viable cultures due to the heat-treating process. (MTD at 14.) Thus, regardless of whether yogurt powder began as Lactic-Acid-Bacteria-containing yogurt, the end result is the same: yogurt powder without active cultures. Because consumers are getting the same end result, they could not have been materially misled. Plaintiff responds that even after the drying process "yogurt powder still has certain health benefits." (Opp'n at 9.) But that is contradicted by Plaintiff's FAC, where she alleges the yogurt powder in the coating is "de minimis" such that there could not be any meaningful health benefits attributable to the bacterial cultures present in the ingredient from which the yogurt powder derives. (FAC ¶ 48.)

### D.    Plaintiff's "Reasonable Consumer" Arguments Fail

Plaintiff's FAC should also be dismissed because no reasonable consumer would be misled by "Yogurt Covered Raisins" on the front label. (MTD at 16-19.) As the FDA has explained, "products such as frozen yogurt, yogurt-coated cereal, and dried yogurt powder are not represented as and do not purport to be yogurt," 86 Fed. Reg. at 31124, so reasonable consumers would not be deceived into thinking the raisins are coated in yogurt of any form. But, if a consumer is unsure about the nature of the raisins' coating, she can look at the ingredient list on the back, which discloses the use of yogurt powder.

Plaintiff argues it is inappropriate to determine whether a reasonable consumer would be deceived on a motion to dismiss (Opp'n at 12), but courts have dismissed substantially similar claims at this stage. *Spurck v. Demet's Candy Co.*, No. 21-cv-05506, 2022 U.S. Dist. LEXIS 133685, at *6-8 (S.D.N.Y. July 27, 2022); *Werbel v. Pepsico, Inc.*, No. 09-cv-04456, 2010 U.S. Dist. LEXIS 76289, at *9-13 (N.D. Cal. July 1, 2010). Plaintiff also claims that consumers shouldn't have to look beyond statements on the front of a box to discover the truth from the ingredient list. (Opp'n at 13.) But that rule only applies when

the front label is "unambiguously deceptive." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023). The Court has already found there is a "long history" of "yogurt-covered" products covered not with fresh yogurt (that complies with yogurt's standard of identity), but a hardened shell coating. (Order at 6.) Accordingly, "yogurt-covered" is not unambiguously deceptive such that a significant portion of the general consuming public would understand the term to mean the raisins are covered in a "form" of yogurt that complies with the standard of identity by having live Lactic Acid Bacteria.

### E.   Plaintiff's Claims Fail for Additional, Independent Reasons

*First*, Plaintiff argues her claims are not impliedly preempted because she can assert a violation of the Sherman law. (Opp'n at 9 n.5.) Plaintiff is again attempting to amend her complaint through pleading. She has never alleged a violation of the Sherman law.

*Second*, Plaintiff's express and implied warranties claims, which are premised on the product labeling representing the raisins are "yogurt covered" when they "do not contain yogurt in any form," fail. As the FDA has stated, yogurt-covered products "are not represented as and do not purport to be yogurt," and thus need not contain yogurt complying with the standard of identity in any form. (MTD at 20 (quoting 86 Fed. Reg. at 31124).) Plaintiff ignores the FDA's clear pronouncement in her Reply. (Opp'n at 14-16.)

*Third*, Plaintiff argues that her implied warranty claim should not be dismissed for lack of privity because: (1) privity of contract is not required when an implied warranty claim relates to "foodstuffs"; and (2) she was an intended third-party beneficiary of the "Yogurt Claim." (*Id.* at 15-16.) Incorrect. As Sun-Maid previously explained, and Plaintiff failed to address, the "foodstuffs" exception to privity does not apply where, as here, a plaintiff claims only economic, not physical, injury. *Hammock v. Nutramarks, Inc.*, No. 15-cv-2056, 2016 U.S. Dist. LEXIS 124240, at *13-16 (S.D. Cal. Sept. 12, 2016).

Meanwhile, "no published decision of a California court has applied this [third party beneficiary exception] doctrine in the context of a consumer claim against a product manufacturer," and, in any event, Plaintiff has failed to allege a contract was entered into between Sun-Maid and Walmart (her place of purchase) for Plaintiff's benefit. *Shay v. Apple Inc.*, No. 20-cv-1629, 2021 U.S. Dist. LEXIS 84415, at *16 (S.D. Cal. May 3, 2021).[9]

*Fourth*, Plaintiff's intentional misrepresentation claim fails because she has not alleged sufficient facts of intent to defraud. (MTD at 21-23.) Plaintiff does not dispute that her allegations are substantially identical to those rejected in *Broussard v. Dole Packaged Foods, LLC*, No. 23-cv-03320, 2024 U.S. Dist. LEXIS 63935 (N.D. Cal. Apr. 8, 2024). She instead argues that *Broussard* is distinguishable because, here, an FDA letter provided Sun-Maid "ample notice of the misleading nature of its advertisements." (Opp'n at 17-18.) But, as the Court previously noted, that letter "does not state that any particular provision of the FDCA requires [any] change." (Order at 6.) This claim also fails under the economic loss rule, and the only case Plaintiff cites is inapposite because she fails to allege specific facts to show "conduct which is both intentional and intended to harm." *Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011).

*Fifth*, Plaintiff fails to respond to the case law in Sun-Maid's MTD holding that a plaintiff lacks standing to seek injunctive relief where her professed intent to purchase the product in the future is wholly contingent on a reformulation of the product. (MTD at 24.)

### III.   CONCLUSION

For these reasons, and because any amendment would be futile, Sun-Maid requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

---

[9] Plaintiff cites to paragraphs 22-23 of the FAC in support of her claim that she is a third-party beneficiary (Opp'n at 16), but these paragraphs do not say anything of the sort.

|   |   |   |
|---|---|---|
|   | | Respectfully submitted, |
| DATED: March 17, 2025 | | **HIGGS FLETCHER & MACK LLP** |
|   | By: | */s/ Jacob T. Spaid* <br> Jacob T. Spaid |
|   | | *Attorney for Defendant* <br> *Sun-Maid Growers of California* |