UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET MCGARITY, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>   v.<br><br>SUN-MAID GROWERS OF CALIFORNIA; and DOES 1 through 10, inclusive,<br><br>                         Defendants. | Case No. 24-cv-0714-BAS-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 28)** |

      This case concerns whether Defendant Sun-Maid Growers of California ("Sun-Maid" or "Defendant") violates California consumer protection laws by using the term "yogurt covered" on the packages of its "Vanilla Yogurt Covered Raisins" and "Strawberry & Vanilla Yogurt Covered Raisins" (collectively, "the Products"). Defendant moves to dismiss Plaintiff Margaret McGarity's ("Plaintiff") First Amended Complaint ("FAC") primarily on the grounds that federal law preempts Plaintiff's state-law claims. (ECF No. 28 or "Mot.") Plaintiff opposes. (ECF No. 31 or "Opp'n.") Defendant replies. (ECF No. 34.)

      The Court finds the motion suitable for determination on the papers submitted and without oral argument. Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons set forth

below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. (ECF No. 28.)

## I. BACKGROUND

Plaintiff's initial complaint alleged that Defendant's "yogurt covered raisins" violate California false advertising and consumer protection laws because the Products are, in fact, not coated in yogurt as defined by federal regulations and as understood by a reasonable consumer. Following an order granting Defendant's first Motion to Dismiss, Plaintiff filed an Amended Complaint alleging that the Products violate California false advertising and consumer protection laws because they are, in fact, not coated in yogurt (in any form) as defined by federal regulations and as understood by a reasonable consumer.

Specifically, Plaintiff challenges Defendant's labeling of the Products called "Vanilla Yogurt Covered Raisins" and "Strawberry & Vanilla Yogurt Covered Raisins." Plaintiff alleges the Products are not coated in yogurt, or any product derived from yogurt, but with a "highly-processed candy coating." (ECF No. 18 ("FAC") ¶¶ 32, 36.) Plaintiff derives this allegation from the list of ingredients for the Products, which includes "yogurt powder" made from "cultured whey and nonfat milk." (*Id.* ¶ 33; *see also id.* ¶ 34 (showing the ingredients for the Strawberry & Vanilla Yogurt Covered Raisins include "yogurt powder" made from "cultured whey, nonfat milk").)

The Food and Drug Administration ("FDA"), acting under the federal Food, Drug & Cosmetic Act ("FDCA"), promulgated regulations defining yogurt as "the food produced by culturing one or more of the basic dairy ingredients . . . with a characterizing bacterial culture that contains the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*." 21 C.F.R. § 131.200(a).

Over ten years ago, Defendant received an informational letter from the FDA advising Defendant to more appropriately identify one of the Products as "Vanilla Yogurt-*Flavored* Covered Raisins" rather than "Vanilla Yogurt Covered Raisins." (FAC ¶ 46.) Defendant received this letter in 2014 but did not revise its label. (*Id.* ¶ 47; *id.*, Ex. A.)

In 2021, the FDA issued a Yogurt Final Rule where it clarified that "yogurt-coated" products, such as cereal or pretzels, need not be covered in "yogurt," as defined by the standard of identity above. Rather, such nonstandardized products with "yogurt" in the product name must contain yogurt powder that *derives* from yogurt. *See* Yogurt Final Rule, 86 Fed. Reg. 31117-01, 31124 (June 11, 2021) (to be codified at 21 C.F.R. pts. 130–31).

Plaintiff alleges, and Defendant does not dispute, that the Products do not contain yogurt as defined by the FDA standard of identity. (FAC ¶ 32; *see generally* Mot.) Plaintiff further alleges that the yogurt powder used in the Products is not derived from a substance that meets the FDA definition of yogurt because neither of the ingredients of the yogurt powder are cultured with the lactic acid-producing bacteria required for the substance to be considered to be derived from yogurt. (FAC ¶ 44.) In support of these claims, Plaintiff relies on the ingredient list of the Products and a footnote from Defendant's prior briefing (the "Footnote"), which reads:

> The ingredient list shows that the ingredients in the yogurt powder are cultured whey and nonfat milk. Yogurt is not listed as an ingredient of the yogurt powder for the simple reason that yogurt is not an ingredient. Instead, cultured whey and nonfat milk are listed as the ingredients of the yogurt powder because those are the ingredients in yogurt. The yogurt standard of identity describes yogurt as "the food produced by culturing one or more of the basic dairy ingredients specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c)," as well as any of the "other optional ingredients in paragraph (d)." 21 C.F.R. § 131.200(a). One of those basic dairy ingredients specified in paragraph (b) is milk. *See id.* § 131.200(b). Cultures, including cultured whey, is one of the other optional ingredients in paragraph (d). *See id.* § 131.200(d). Accordingly, cultured whey and nonfat milk are the ingredients of both yogurt and yogurt powder (which is dehydrated yogurt).

(*Id.* ¶ 5; ECF No. 14 at 4 n.1.)

Plaintiff brings six claims under (1) California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (2) California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*; (3) California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*;

(4) breach of express warranty, California Commercial Code § 2313; (5) breach of the implied warranty of merchantability, California Commercial Code § 2314(2)(f); and (6) intentional misrepresentation under California common law. Plaintiff seeks various forms of declaratory, injunctive, and monetary relief, as well as attorney's fees and costs.

Defendant moves to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 9(b), 12(b)(1), and 12(b)(6). Defendant argues Plaintiff's theory of the case has not substantially changed and continues to be expressly and impliedly preempted. Defendant also claims a reasonable consumer could not be misled by the "yogurt covered" claim on the Products' packaging. Further, Defendant argues Plaintiff fails to state a claim for breach of express or implied warranty, or for intentional misrepresentation, and that the economic loss rule bars Plaintiff's intentional misrepresentation claim. Finally, Defendant argues that Plaintiff has no standing to pursue the injunctive relief she seeks.

## II.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to make sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating the sufficiency of these factual allegations, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice."[1] *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient

---

[1] Defendant requests that the Court take judicial notice of the results of a USDA FoodData Central Food Search. (Reply at 4 n.5.) The Court declines to take judicial notice of these USDA search results because it finds them unnecessary to resolve the instant motion. *See Ecological Rts. Found. v. PacifiCorp*, 738 F. Supp. 3d 1239, 1248 (N.D. Cal. 2024) (denying request for judicial notice of documents the court did not consider in deciding the motion); *see also Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1039 (N.D. Cal. 2017) (same). Accordingly, Defendant's request for judicial notice is denied.

to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). A district court may also dismiss a complaint when its allegations "give rise to an affirmative defense that clearly appears on the face of the pleading." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). "Preemption, on which the defendant bears the burden, . . . can be such a defense." *Pardini v. Unilever U.S., Inc.*, 65 F.4th 1081, 1084 (9th Cir. 2023) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

## III.  ANALYSIS

### A.  Preemption

Defendant argues that Plaintiff's claims are both expressly preempted because Plaintiff does not sufficiently allege an FDCA violation and impliedly preempted because Plaintiff's claims exist solely by virtue of the FDCA requirements. (Mot. at 3:13–4:12.) The Court finds that Plaintiff's claims successfully fit through the narrow window to escape preemption because Plaintiff has sufficiently alleged an FDCA violation and state-law claims that are not predicated solely on that FDCA violation.

The concept of federal preemption of state laws is grounded in the Supremacy Clause of the Constitution. Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, since *M'Culloch v. Maryland*, 17 U.S. 316 (1819), the federal judicial system has held "that state

law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

"The party contending that a claim is preempted bears the burden of establishing preemption." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) (citation omitted). "Express preemption exists when a statute explicitly addresses preemption." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020). Implied or field preemption precludes states "from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Courts apply a presumption against preemption because "the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000) (citation omitted). In the area of proper marketing and labeling of food products, the presumption against preemption is "strong." *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (quoting *Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders." (citation omitted))).

To escape FDCA preemption, private plaintiff claims must fit through a narrow window. The claims may neither be brought *because* they violate the FDCA, nor may they be brought for acts that the FDCA *permits*. In other words, "[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted . . .), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted . . .)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (citing *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). Private plaintiffs may only bring a state-law claim where that state requirement "effectively parallels or mirrors the relevant sections of" the FDCA. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).

The Secretary of Health and Human Services has authority to promulgate regulations to enforce the FDCA, 21 U.S.C. § 371(a), and has delegated this authority to the FDA, *see FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 126 (2000). With this authority, the FDA has created a standard of identity for yogurt. *See* 21 C.F.R. § 131.200. When it published this standard of identity, the FDA clarified that the standard does not apply to products identified as "yogurt-coated." *See* Yogurt Final Rule, 86 Fed. Reg. at 31124 (listing "frozen yogurt, yogurt-coated cereal, and dried yogurt powder" as "nonstandardized products"). As the Court has previously found, yogurt-covered raisins need not comply with this standard of identity. (*See* ECF No. 15 at 7:16–20.) Instead, the FDA requires yogurt-coated products be coated with a product containing yogurt powder derived from dried yogurt which conforms with the standard of identity for yogurt. Yogurt Final Rule, 86 Fed. Reg. at 31124.

Plaintiff's false and deceptive advertising and labeling claims rest on Defendant's raisins being coated by a product containing yogurt powder that was not derived from dried yogurt conforming with the FDA's standard of identity for yogurt. In support of these allegations, Plaintiff points to the Products' ingredient list and the Footnote. (FAC ¶ 5.) Plaintiff infers both from the ingredient list and the Footnote that the nonfat milk used to make the yogurt powder in Defendant's Products is not cultured, which would mean that the yogurt powder is not derived from yogurt. *See* Yogurt Final Rule, 86 Fed. Reg. at 31124. According to the Yogurt Final Rule, products cannot be described as "yogurt covered" if they do not contain an ingredient derived from yogurt. *See id.* Hence, accepting the allegations in Plaintiff's FAC as true, Plaintiff has sufficiently pled a violation of the FDCA and, in making a false and deceptive claim, violation of California consumer protection laws. *See Manzarek*, 519 F.3d at 1031. Therefore, Plaintiff's claims are not expressly preempted. *See Perez*, 711 F.3d at 1120. Although Defendant argues Plaintiff's allegations of an FDCA violation are based on speculation, the Court does not operate as a fact-finder at the pleading stage and must accept all facts pled as true. *See id.*

Moreover, as discussed below, Plaintiff sufficiently pleads her CLRA, FAL, UCL, and breach of express warranty claims. These claims do not exist solely because of FDA regulations, rather they stand alone as violations of California consumer protection laws. Although elements of Plaintiff's claims parallel duties owed under federal law, her claims are rooted in state law and are not an attempt to privately enforce federal labeling laws; thus, the claims avoid implied preemption. *See Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 849 (9th Cir. 2024) (discussing Supreme Court and Ninth Circuit cases rejecting implied preemption where "plaintiffs claimed violations of parallel state law duties, not the violation of duties owed under federal law").

As such, Plaintiff is neither suing merely because the alleged conduct violates the FDCA, nor for conduct the FDCA permits. *See Perez*, 711 F.3d at 1120. Plaintiff's claims thus fit through the narrow window prescribed by the Ninth Circuit to escape both express and implied preemption by the FDCA.

### B.  The Reasonable Consumer Standard

Each of the claims in Plaintiff's FAC are subject to the "reasonable consumer" test. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (UCL, FAL, CLRA); *Robles v. Gojo Indus., Inc.*, No. SACV 21-928 JVS (DFMx), 2022 WL 2163846, at *7 (C.D. Cal. Mar. 16, 2022) (intentional misrepresentation), *aff'd*, No. 22-55627, 2023 WL 4946601 (9th Cir. Aug. 3, 2023); *Lee v. Nature's Path Food, Inc.*, No. 23-cv-00751-H-MSB, 2023 WL 7434963, at *4 (S.D. Cal. Nov. 9, 2023) (breach of express warranty).[2] The question of whether a reasonable consumer would be deceived by product packaging generally is not suited for resolution on a motion to dismiss. *See Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). However, when a court can

---

[2] Here, Plaintiff's breach of implied warranty claim rises and falls with her breach of express warranty claim. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017). Accordingly, the Court's analysis of the reasonable consumer standard with respect to breach of express warranty encompasses Plaintiff's breach of implied warranty claim.

conclude as a matter of law that members of the public are not likely to be deceived by the product's packaging, dismissal is appropriate. *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013).

Plaintiff asserts that a reasonable consumer would expect that a product claiming to be "yogurt covered" would include an ingredient either made with or derived from yogurt. (FAC ¶¶ 43–45.) The Court does not find this to be an unwarranted inference and accepts this allegation as true. *See Adams*, 355 at 1183; *Manzarek*, 519 F.3d at 1031. As such, there is nothing to suggest that, as a matter of law, members of the public are unlikely to be deceived by the Product's packaging. *See Pelayo*, 989 F. Supp. 2d at 978. Accordingly, the Court cannot dismiss the FAC on this basis. *See id.*

Defendant's arguments that Plaintiff has not shown that reasonable consumers would be misled are grounded in the assumption that Plaintiff is alleging that reasonable consumers would believe the Products are covered in fresh yogurt. (Mot. at 17:16–21.) However, the Court must construe the pleadings in the light most favorable to Plaintiff and reject this assertion. *See Manzarek*, 519 F.3d at 1031. As such, the Court takes Plaintiff's allegation that a reasonable consumer would assume the Products include yogurt (in some form) to mean that a reasonable consumer would assume the Products include an ingredient made of or derived from yogurt. Therefore, Defendant's arguments that a reasonable consumer would not believe the Products to be covered in fresh yogurt are moot.

Defendant also argues that any ambiguity posed by the "yogurt covered" claim could be resolved by the back panel of the Products, which makes clear that the Products' coating is made from yogurt powder. (Mot. at 18:1–5.) However, as discussed above, the ingredient list on the Products does not clarify whether or not the yogurt powder in the Products is derived from yogurt. As Plaintiff alleges, the ingredient list suggests that the yogurt powder is made with uncultured nonfat milk, which would mean that the yogurt powder is not derived from yogurt. (FAC ¶ 5.) Accordingly, not only is the ambiguity of the "yogurt covered" claim not resolved by the back panel, but the back panel makes the veracity of the "yogurt covered" claim more ambiguous.

### C. Breach of Express and Implied Warranties

To prove a breach of an express warranty, a plaintiff must allege that a seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Corbett*, 567 F. Supp. 3d at 1199 (citation modified). Under California law, a plaintiff may allege a breach of implied warranty of merchantability if a product fails to "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f). However, "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley*, 273 F. Supp. 3d at 1096 (quoting Cal. Com. Code § 2314(2)).

Here, Plaintiff's breach of express warranty claim is predicated upon the "yogurt covered" claim on the Products' packaging. (FAC ¶ 103.) Plaintiff alleges that the "yogurt covered" claim is an affirmation of fact, on which Plaintiff and other customers relied, which was breached because the Products do not actually contain an ingredient made of or derived from yogurt, causing economic harm to Plaintiff and other customers. (*Id.* ¶¶ 101–04.) Accordingly, Plaintiff sufficiently states a claim for breach of express warranty. Again, Defendant's argument that Plaintiff fails to state a claim for breach of express warranty relies on its assumption that Plaintiff expected the Products to be made with fresh yogurt. (Mot. at 20:20–28.) As discussed above, the Court rejects this interpretation, and so the Court must reject Defendant's arguments against Plaintiff's breach of express warranty claim.

However, vertical contractual privity is required to sustain a breach of implied warranty claim. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *see also* Cal. Com. Code § 2314(1) (specifying that implied warranties apply in contracts for sales of goods). An end consumer "who buys from a retailer is not in privity with a

manufacturer." *Clemens*, 534 F.3d at 1023 (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)). As such, Plaintiff is not in vertical contractual privity with Defendant. Further, Plaintiff does not sufficiently allege any other contract to which she may be a direct or third-party beneficiary. (*See generally* FAC.) Moreover, in special cases involving foodstuffs, an exception to the privity requirement arises when the product is unfit for human consumption or physically injures a consumer. *Seale v. GSK Consumer Health, Inc.*, 718 F. Supp. 3d 1208, 1230 (C.D. Cal. 2024). But here Plaintiff does not allege that the Products are unfit for human consumption nor that they caused a physical injury, and so the foodstuffs exception does not apply. (*See generally* FAC.) Therefore, Plaintiff's implied warranty claim fails because she is not in vertical contractual privity with Defendant, and the Court dismisses this claim without prejudice.

### D. Intentional Misrepresentation

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)). Additionally, under Federal Rule of Civil Procedure 9(b), "an allegation of 'fraud or mistake [. . .] must state with particularity the circumstances constituting fraud [or mistake].'" *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415–16 (C.D. Cal. 2012) (quoting Fed. R. Civ. P. 9(b)). This heightened pleading standard requires that "when averments of fraud are made, the circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess*, 317 F.3d at 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Yet, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendant argues that Plaintiff has inadequately pled Defendant's intent to defraud. (Mot. at 22:1–3.) In support of her intentional misrepresentation claim, Plaintiff points to the fact that Defendant intentionally and conspicuously placed the "yogurt covered" claim

- 11 -

24cv0714

on its packaging, ignored the advice of the FDA to call the Products "Yogurt-Flavored," and emphasized on its websites that the Products were "wrapped in a creamy blanket of vanilla yogurt." (Opp'n at 17:1–10.) Although Plaintiff's intentional misrepresentation claim is subject to the heightened pleading standard of Rule 9(b), Plaintiff still need only plead "intent, knowledge, and other conditions of a person's mind" generally. Fed. R. Civ. P. 9(b). Accordingly, accepting the allegations of the FAC as true and construing them in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged Defendant's intent to defraud. *See Manzarek*, 519 F.3d at 1031.

Nevertheless, California's economic loss rule bars Plaintiff's intentional misrepresentation claim. The economic loss rule "hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citation modified). "When a plaintiff alleges only economic loss without allegations of some form of injury, the economic loss rule may bar recovery." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 954 (S.D. Cal. 2021). "[T]o survive the economic loss rule's bar, a plaintiff pursuing a fraud claim for relief must plead that the fraud arises from the 'defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages *independent of* the plaintiff's economic loss.'" *Id.* (quoting *Robinson Helicopter Co.*, 34 Cal. 4th at 993).

Here, Plaintiff does not allege that Defendant's misrepresentations have exposed Plaintiff to liability for personal damages outside of the economic harm Plaintiff alleges she has suffered. (*See* FAC ¶ 121.) Accordingly, Plaintiff's economic expectations are protected by commercial law, and Plaintiff has suffered no injury traditionally remedied by tort law. *See Robinson Helicopter Co.*, 34 Cal. 4th at 988. Therefore, Plaintiff's

intentional misrepresentation claim is barred by the economic loss rule, and the Court dismisses this claim without prejudice.

### E. Standing to Pursue Injunctive Relief

To pursue injunctive relief, a plaintiff must show a sufficient likelihood that it will be injured by the defendant again in a similar way and that the future injury can be redressed by injunctive relief. *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016). If the party seeking injunctive relief does not allege that it intends to purchase a product from the defendant in the future, it cannot demonstrate a likelihood of future injury. *See id.* However, a party may face a threat of imminent or actual harm by not being able to rely on a product's labels in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because she has not shown a real or immediate threat of future harm. (Mot. at 24:2–4.) Defendant does not address the Ninth Circuit's holding that a party may face a threat of imminent or actual harm by not being able to rely on a product's labels in the future, instead stating that this threat is "'too conjectural or hypothetical to establish Article III standing.'" (*Id.* at 25:1–3 (quoting *Grausz v. Kroger Co.*, No. 19-cv-449 TWR (AGS), 2021 WL 5534706, at *6 (S.D. Cal. Jan. 22, 2021))). The Court agrees that Plaintiff has adequately pled a threat of imminent or actual harm because she will not be able to rely on Defendant's labels in the future. *See Davidson*, 889 F.3d at 967. Accordingly, the Court will not dismiss Plaintiff's request for injunctive relief.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 28). The Court **DENIES** the Motion to Dismiss Counts One, Two, Three, and Four of Plaintiff's FAC, but **GRANTS** the Motion to Dismiss Counts Five and Six **WITHOUT PREJUDICE**. Pursuant to Rule 15(a)(2), Plaintiff is **GRANTED LEAVE TO AMEND** her allegations to correct the deficiencies identified above. Plaintiff may file a second amended complaint **no later than August 19,**

**2025**.  If Plaintiff does not file a second amended complaint on or before August 19, 2025, then only Plaintiff's CLRA, FAL, UCL, and breach of express warranty claims will remain, and Defendant must respond to the FAC **no later than September 2, 2025**.

**IT IS SO ORDERED.**

**DATED: July 29, 2025**

**Hon. Cynthia Bashant, Chief Judge
United States District Court**